NATIONAL EDUCATION TRAINING GROUP, INC., formerly Applied Learning International, Inc., Plaintiff,

v.

The RESOLUTION TRUST CORPORATION, as receiver for the San Antonio Savings Association, Defendant.

No. 92 C 2085.

United States District Court,
N.D. Illinois, E.D.

July 15, 1992.

Michael Sweig Mendelson, Jay Hilton Mittelstead, Jr., McConnell & Mendelson, Chicago, Ill., for plaintiff.

Frank M. Grenard, Andrea Michele Buford, R. Delacey Peters, Jr., Jones, Ware & Grenard, Michael Sweig Mendelson, Jay Hilton Mittelstead, Jr., McConnell & Mendelson, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is the plaintiff's motion to vacate the May 8, 1992 dismissal of this action, and the parties' respective motions for Rule 11 sanctions. For reasons that follow, the motion to vacate is denied and both Rule 11 motions are denied.

## FACTS

Plaintiff National Education Training Group, Inc. ("NETG") filed its original complaint on March 26, 1992, and an amended complaint on April 22, 1992, seeking declaratory relief and damages from defendant Resolution Trust Corporation ("RTC"). NETG,[1] a Nevada corporation based in Naperville, Illinois, allegedly entered into a contract to rent various library materials to the San Antonio Savings Association ("San Antonio Savings") in 1991.

On March 9, 1990, San Antonio Savings was declared insolvent and the RTC was appointed as the institution's receiver. Less than a week earlier, NETG had sent an invoice to San Antonio Savings for $37,454.40, the third and final installment on the library materials contract, which remains unpaid.

The RTC liquidator-in-charge of San Antonio Savings notified NETG by letter dated June 29, 1990 that the RTC was repudiating the NETG–San Antonio Savings contract pursuant to its rights under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") (codified in scattered sections of 12 U.S.C.). NETG filed a claim for the final installment with the RTC on October 18, 1990, which the RTC denied on April 3, 1991. NETG sought administrative appeal of the denial within the RTC on June 3, 1991. An RTC official notified NETG by letter dated August 19, 1991 that RTC would not consent to an administrative hearing on NETG's appeal. NETG's next move was to file the instant lawsuit.

The RTC filed a motion to dismiss the complaint on April 29, 1992, asserting, among other grounds, that the complaint was untimely, that service on the RTC was improper, and that venue was improper in this district. Additionally, the RTC sought the imposition of sanctions against NETG under Fed.R.Civ.P. 11 based on the allegedly improper filing of the complaint. The dismissal motion was granted on May 8, 1992, the date for presentment of the motion in court, after NETG's counsel failed to appear. Ruling on the Rule 11 request was reserved pending a response from NETG.

On May 22, 1992, NETG filed its instant motion under Fed.R.Civ.P. 60(b) to vacate the dismissal, and its response to NETG's Rule 11 motion. The response included NETG's own request for Rule 11 sanctions against the RTC for allegedly misrepre-

---

[1]. NETG was formed through the merger of two other companies in 1987. The surviving company changed its name to NETG in 1991. An NETG predecessor allegedly entered into the underlying contract.

senting authority in the dismissal motion.[2]

## DISCUSSION

NETG seeks vacation of the May 8 dismissal order under Fed.R.Civ.P. 60(b)(1) and (6), claiming that it did not receive notice of the RTC's motion and the dismissal was therefore the product of "surprise" under (b)(1), and that the dismissal was erroneous, constituting an "other reason justifying relief" under (b)(6).

■■■ This court has broad discretion to grant or deny a 60(b) motion. *Lee v. Village of River Forest,* 936 F.2d 976, 979 (7th Cir.1991). The court will review the merits of the dismissal, considering the motion under 60(b)(6), making it unnecessary to address whether any relief is warranted by NETG's alleged lack of notice of the RTC's dismissal motion before it was decided. NETG has addressed the merits of the dismissal at length in its response to the RTC's Rule 11 motion, and NETG's arguments have been taken into account in deciding both the 60(b) and Rule 11 issues. Therefore, NETG has not been prejudiced by its alleged earlier lack of an opportunity to oppose the RTC's dismissal motion.

■■■ The RTC and NETG, in addition to having opposite contentions regarding subject matter jurisdiction, point to different venue statutes. NETG prefers a venue provision in the Administrative Procedure Act, 5 U.S.C. § 703, which part of FIRREA, 12 U.S.C. § 1821(d)(7)(A), apparently makes applicable to judicial review of RTC administrative appeal proceedings. Section 703 is a catch-all venue provision, stating that in the absence of special statutory venue provisions, lawsuits falling within the Administrative Procedure Act may be brought in "a court of competent jurisdiction." NETG contends that this provision applies and allows venue in this court.

The RTC argues that the applicable venue provision is 12 U.S.C. § 94, a part of the National Bank Act of 1864 left on the books following 1982 amendments restrict-

ing the scope of that Act. *See FDIC v. Hartford Ins. Co.,* 877 F.2d 590, 592–93 (7th Cir.1989) (discussing background of § 94), *cert. denied,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 948 (1990). Section 94, which states that it applies to any lawsuit against a national banking association over which the Federal Deposit Insurance Corporation has been appointed as a receiver, allows venue only in the district encompassing the subject banking association's principal place of business. NETG did not discuss § 94, but presumably objects to its application here.

Section 94 is "a uniquely powerful statute, trumping other venue provisions of more general application." *FDIC,* 877 F.2d at 594. It is applicable to the RTC, even though § 94 only mentions the FDIC. 12 U.S.C. § 1441a(b)(4)(A) (RTC "shall have the same powers and rights to carry out its duties ... as the [FDIC] with respect to insured depository institutions...."); *Nuerge v. Resolution Trust Corp.,* 762 F.Supp. 818, 822 (N.D.Ind.1991) (applying § 94 to RTC). The same policies apply to administration of financial institution receiverships—promoting consistent, efficient handling of claims against the subject institution in one judicial forum—whether the receiver is the FDIC or the RTC. *See FDIC,* 877 F.2d at 593 (discussing purpose of § 94). Moreover, § 94 "trumps" the more general Administrative Procedure Act venue provision, 5 U.S.C. § 703, which NETG suggested.

Therefore, this court lacks venue over NETG's complaint, and the complaint was properly dismissed on May 8, 1992. The May 8 dismissal order is modified, however, to become a dismissal for improper venue under Fed.R.Civ.P. 12(b)(3) rather than for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). The RTC's motion to dismiss raised additional issues concerning this court's subject matter jurisdiction over the complaint, which need not be addressed.

---

**2.** NETG filed a motion for summary judgment on June 26, 1992, which is rendered moot by this order.

Regarding the respective Rule 11 motions, the court finds that neither side's pleadings warrant sanctions. While NETG's position was rejected, its arguments regarding subject matter jurisdiction and venue under FIRREA were not clearly contrary to either the language of the statute or case law interpreting the statute. FIRREA is a relatively new statute, and although many recent decisions have clarified it, the court has not found any cases addressing the specific subject matter and venue questions present under the circumstances here—a claimant seeking judicial recourse after the RTC denied both a claim and the claimant's subsequent request for an administrative review hearing. Additionally, FIRREA is not a model of concise drafting. *See Marquis v. FDIC*, 965 F.2d 1148, 1151 (1st Cir.1992) ("FIRREA's text comprises an almost impenetrable thicket, overgrown with sections, subsections, paragraphs, subparagraphs, clauses and subclauses—a veritable jungle of linguistic fronds and brambles."). NETG's failure to address the significance of § 94 is somewhat troubling, but under the circumstances, it does not appear to be the result of conscious avoidance of contrary authority.

Furthermore, the RTC's motion to dismiss includes the same citations as a letter its counsel sent to NETG's counsel before the complaint was filed, essentially warning NETG's counsel against filing any lawsuit over its claim. Obtaining dismissal of the lawsuit therefore required little, if any, additional research by the RTC and its pleadings in this court are short, reflecting a relatively small amount of drafting time.

Regarding NETG's Rule 11 motion, the RTC's pleadings were reasonably supported by the applicable facts and law. Accordingly, both parties' motions for sanctions under Fed.R.Civ.P. 11 are denied.

## CONCLUSION

NETG's Rule 60(b) motion to vacate the May 8, 1992 dismissal of its complaint is denied, but the dismissal order is modified to show that the dismissal was for improper venue under Fed.R.Civ.P. 12(b)(3) and not for lack of subject matter jurisdiction under 12(b)(1). Both the RTC's and NETG's motions for sanctions under Fed.R.Civ.P. 11 are denied.

IT IS SO ORDERED.