**CHEMICAL FUTURES & OPTIONS, INC., Manufacturers Hanover Futures, Inc., and Anne Hennessy, Plaintiffs,**

v.

**RESOLUTION TRUST CORPORATION, Defendant.**

No. 93 C 2873.

United States District Court, N.D. Illinois, E.D.

Aug. 25, 1993.

William John Nissen, Thomas David Rein, Robert M. Hatch, Sidley & Austin, Chicago, IL, for plaintiffs.

Jack Donatelli, U.S. Attorney's Office, Constantine John Gekas, Harvitt & Gekas, Ltd., Chicago, IL, Douglas G. Thompson, Jr., Peter C. Cohen, Kevin V. McAlevy, Finkelstein, Thompson & Loughran, Washington, DC, for defendant.

### MEMORANDUM OPINION

KOCORAS, District Judge:

This matter comes before the Court on defendant's motion to dismiss. For the reasons set forth below, defendant's motion to dismiss based on improper venue and lack of subject matter jurisdiction is denied. Defendant's motion to dismiss based on the failure to state a claim is denied in part and granted in part.

### BACKGROUND

Defendant, Resolution Trust Corporation ("the RTC"), has instituted an arbitration proceeding to recover over $11.6 million from the plaintiffs, Chemical Futures & Options, Inc. ("Chemical Futures"), Manufacturers Hanover Futures, Inc. ("Manufacturers Hanover"), and Anne Hennessy ("Hennessy").[1] The claimed damages are financial futures

1. In 1991, Chemical Futures was the surviving entity of a merger with Manufacturers Hanover. As a result, Manufacturers Hanover no longer exists as a separate entity, and Chemical Futures has assumed its obligations in this case.

losses allegedly incurred in 1987 by Santa Barbara Savings and Loan Association ("Santa Barbara"), a state-chartered association later taken over by the RTC. According to the RTC, Santa Barbara incurred the losses as a result of the trading that plaintiffs conducted on Santa Barbara's behalf through Santa Barbara's brokerage account with Manufacturers Hanover.

The RTC instituted the arbitration proceeding pursuant to an agreement ("the Arbitration Agreement") signed by Santa Barbara and by Manufacturers Hanover. The Arbitration Agreement provides that "[a]ny controversy arising out of or relating to [Santa Barbara's] account, to transactions with Manufacturers Hanover Futures, Inc. pursuant to the Customer Account Agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the ... American Arbitration Association, as [Santa Barbara] may elect." The American Arbitration Association has determined that the arbitration proceeding will be conducted in Chicago.

Plaintiffs filed this lawsuit requesting both an injunction staying the arbitration proceeding instituted by the RTC and a declaration that the parties' dispute is not arbitrable. Plaintiffs contend that several issues in dispute are not arbitrable. These issues include the following: (1) whether plaintiff Anne Hennessy can be compelled to arbitrate under the Arbitration Agreement, (2) whether RTC waived any rights it may have had to arbitrate, and (3) whether any or all of the claims asserted by the RTC are barred by their applicable statutes of limitations. Plaintiffs suggest that to the extent this Court determines that these issues are not arbitrable, we should proceed to decide them on their merits.

In response to the plaintiffs' lawsuit, the RTC filed this motion seeking dismissal. The RTC contends that the suit should be dismissed for three reasons. First, the RTC asserts that dismissal is warranted under 28 U.S.C.A. § 1406(a) (West 1976), because the plaintiffs have improperly filed their action in

this Court under 12 U.S.C.A. § 94 (West 1989), and because no purpose would be served by transferring this action to the proper court. Secondly, the RTC argues that this Court lacks subject matter jurisdiction to grant the requested relief under 12 U.S.C.A. § 1821(j) (West 1989). The RTC finally contends that the plaintiffs' complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). We address each of the RTC's arguments in turn.

## DISCUSSION

I. *Dismissal Pursuant to Section 1406(a): Improper Venue* [2]

■ Plaintiffs claim venue pursuant to the general venue provisions found in 28 U.S.C.A. §§ 1391(b) and (e) (West Supp. 1993), but the RTC contends that the general venue provisions are not applicable in this case because they are superseded by the special venue provision at 12 U.S.C.A. § 94. Section 94 states as follows:

Any action or proceeding against a national banking association for which the Federal Deposit Insurance Corporation has been appointed receiver, or against the Federal Deposit Insurance Corporation as receiver of such association, shall be brought in the district or territorial court of the United States held within the district in which that association's principal place of business is located, or, in the event any State, county, or municipal court has jurisdiction over such an action or proceeding, in such court in the county or city in which that association's principal place of business is located.

The RTC argues that section 94 requires this action to be brought in the district encompassing Santa Barbara's principal place of business, the Central District of California. We disagree with the RTC that section 94 applies, and accordingly, we deny its motion to dismiss on this ground.

The RTC points out to the Court that under 12 U.S.C.A. § 1441a(b)(4)(A) (West

---

**2.** Under 28 U.S.C.A. § 1406(a), a "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or,

if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Supp.1993), the RTC "shall have the same powers and rights to carry out its duties ... as the Federal Deposit Corporation has under sections [1821, 1822, and 1823] with respect to insured depository institutions...." The RTC claims that the grant of authority in section 1441a(b)(4)(A) yields to it the FDIC's broad venue capabilities under section 94.

Plaintiffs, on the other hand, quite correctly note that section 1441a(b)(4)(A) on its face gives the RTC only those powers and rights conferred on the FDIC by 12 U.S.C.A. §§ 1821, 1822, and 1823. Section 94 is nowhere mentioned in the provision. Plaintiffs therefore conclude that the RTC may not claim a venue right pursuant to section 94 because no statute exists conferring it that right.

The RTC argues in response that section 1821 incorporates the broad venue right conferred by section 94. The RTC suggests that 12 U.S.C.A. § 1821(c)(2)(B) (West 1989) incorporates section 94 by providing the FDIC with "any other power conferred on or any duty (which is related to the exercise of such power) imposed on a conservator or receiver for any Federal depository institution under any other provision of law." Because, in the RTC's view, the venue right conferred by section 94 qualifies as "any other power" conferred on a receiver of a Federal depository institution, section 1821(c)(2)(B) thereby expands the scope of section 94 beyond national banks to all Federal depository institutions, including federal savings and loan associations.[3]

Reading section 1821(c)(2)(B) in context, however, we are not persuaded that the intent of that section was to extend the venue right conferred by section 94 to FDIC receiverships of institutions other than national banks. Section 1821(c)(2)(B)'s reference to the "powers" of receivers for Federal deposi-

tory institutions, in the view of this Court, cannot be interpreted to include a "right" to venue that is not maintained generally by receivers for Federal depository institutions.[4] Rather, as "the residue of the venue provision of the National Bank Act of 1864, which applied to all suits against national banks," section 94 venue is maintained only by the FDIC in cases where national banking associations are involved. *Federal Deposit Ins. Corp. v. Hartford Ins. Co.,* 877 F.2d 590, 592 (7th Cir.1989) (citing, *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976)); *see also* 12 U.S.C.A. § 37 (West 1989). As stated in the legislative history of section 94, venue for actions against FDIC as receiver for institutions other than national banks, such as state banks, or state or federal savings and loan associations, is governed by "other general venue statutes." 1982 U.S.Code Cong. & Adm. News 3054, at 3082.

Because we find section 94 inapplicable based on the facts of this case, the RTC's motion to dismiss on this ground is denied.

## II. Dismissal Pursuant to Section 1821(j): Lack of Subject Matter Jurisdiction

■ The RTC argues that 12 U.S.C.A. § 1821(j) precludes this Court from acting in this dispute. Section 1821(j), in combination with section 1441a(b)(4), provides that no court may take "any action to restrain or affect the exercise of powers or functions" of the RTC as a conservator or a receiver. *Gross v. Bell Savings Bank PA SA,* 974 F.2d 403, 407 n. 8 (3d Cir.1992) (noting that the right granted to the FDIC under section 1821(j) has been made applicable to RTC by section 1441a(b)(4)). Plaintiffs, in response to RTC's motion, present two arguments why section 1821(j) does not bar judicial action in this case.

---

**3.** "Federal depository institution," by definition, includes any national bank, any Federal savings association, and any Federal branch. 12 U.S.C.A. § 1813(c)(4) (West 1989).

**4.** The RTC cites *Nuerge v. Resolution Trust Co.,* 762 F.Supp. 818 (N.D.Ind.1991), in support of its position. Although the *Nuerge* court did apply the section 94 venue provision to an RTC receiv-

ership of a state-chartered savings and loan association, that court merely assumed without analysis that section 1821(c)(2)(B) extends section 94 beyond national bank receiverships. Similarly, the court in *National Educ. Training Group, Inc. v. Resolution Trust Co.,* 794 F.Supp. 838 (N.D.Ill. 1992), assumed the application of section 94 without mention of section 1821(c)(2)(B).

Plaintiffs first argue that the RTC is not acting as either conservator or receiver in instituting the arbitration proceeding, claiming that "RTC itself did not specify receivership capacity in its own arbitration demand." Plaintiffs are in error, however. The first paragraph of the demand, attached as Exhibit B to plaintiffs' complaint, avers that the RTC "was appointed to act as receiver for the failed Santa Barbara Savings and Loan Association of Santa Barbara, California," and that the "RTC succeeded to Santa Barbara's right to initiate proceedings against parties whose actions caused harm to the institution," and finally, that, in initiating the arbitration, the RTC represents, among others, "the interests of Santa Barbara."

Plaintiffs secondly argue that RTC is not acting within the scope of its receivership authority in instituting the arbitration proceeding against them, and thus, section 1821(j) does not bar this lawsuit. *See Nat'l Trust for Historic Preservation v. FDIC*, 995 F.2d 238 (D.C.Cir.1993) (stating that section 1821(j) does not bar injunctive relief when the FDIC proposes to act beyond, or contrary to, its statutorily prescribed powers); *Gross*, 974 F.2d at 407 (holding that federal courts have the ability to restrain the RTC where the Corporation is acting clearly outside its statutory powers).

The RTC disputes plaintiffs' argument by pointing to 12 U.S.C.A. § 1821(d)(2)(A)(i) (West 1989). That section states that, upon becoming receiver for Santa Barbara, the RTC succeeded to "all rights, titles, powers and privileges" of Santa Barbara. In addition, 12 U.S.C.A. § 1821(d)(2)(B)(ii) (West 1989) provides that, as receiver, RTC may "collect all obligations and money due to" Santa Barbara.

Plaintiffs, despite the aforementioned provisions, argue that the RTC is not acting within the scope of its authority in instituting arbitration proceedings. Plaintiffs propose three reasons why the RTC acts beyond its authority in seeking arbitration. Plaintiffs argue that (1) plaintiff Anne Hennessy is not a party to the Arbitration Agreement and cannot be compelled to arbitrate, (2) the RTC's ability to institute the arbitration proceeding as to one count of its arbitration demand is barred by the statute of limitations, and (3) the RTC has waived its right to arbitrate. Plaintiffs claim that "if the failed institution did not have the right or power to institute an arbitration against plaintiff Hennessy, or if RTC has waived the right to arbitrate or allowed the statute of limitations to run in the interim, then RTC had no right or power to institute the arbitration." According to the plaintiffs, judicial determination of these issues is not barred by section 1821(j).

We agree with the RTC that it is acting within the scope of its authority in bringing claims against the plaintiffs on behalf of Santa Barbara. It is indisputable that RTC succeeded to all rights, titles, powers and privileges which formerly belonged to Santa Barbara, including not only Santa Barbara's general right to assert claims against plaintiffs, but also the specific contractual rights that Santa Barbara had under the Arbitration Agreement.

Although we agree that the RTC is acting pursuant to its statutory rights and powers in pursuing its claims against plaintiffs, we decline to grant its motion to dismiss for lack of subject matter jurisdiction. Simply stated, our exercise of jurisdiction in this case would not "restrain or effect" the RTC in pursuing its claims against the plaintiffs. Therefore, section 1821(j) by its terms does not apply.

The RTC demands arbitration pursuant to a contractual provision in the Arbitration Agreement that requires arbitration of "[a]ny controversy arising out of or relating to [Santa Barbara's] account...." The contract assumes certain procedural and substantive law governs the institution of an arbitration proceeding, including law requiring this court to determine certain arbitrability issues prior to commencement of arbitration. Accordingly, we find that for this Court not to intervene at this juncture would be to place the RTC above the law under which it seeks relief, allowing it to institute an arbitration proceeding regardless of whether it has a right under the Arbitration Agreement to do so. *See Cummings Properties Management, Inc. v. Federal Deposit Ins. Corp.*, 786 F.Supp. 144, 146 (D.Mass.1992) ("section 1821(j) does

not elevate the FDIC to the position of a sacred cow which may graze upon the rights of others at will, unchecked by the courts") (citation omitted). While it is the case that the RTC may assert Santa Barbara's right to arbitration under the Arbitration Agreement without judicial interference, it is not the case that the RTC may escape the law governing that agreement in doing so. The RTC has demanded arbitration of its claims based upon the arbitration clause in the contract, and if the law deems it, the RTC shall receive arbitration. We now turn to the RTC's motion to dismiss for failure to state a claim.

### III. *Dismissal For Failure to State A Claim*

■ The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case. The moving party must meet a high standard in order for a complaint to be dismissed for failure to state a claim upon which relief can be granted. Under the "notice pleading" standard of the Federal Rules, the allegations in the complaint should be construed liberally, and "the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). When ruling on a motion to dismiss, all allegations in the complaint are viewed in the light most favorable to the plaintiff, and all well-pleaded facts and allegations must be taken as true. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 733 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). A complaint will not be dismissed based merely on vagueness or lack of detail. *Strauss v. Chicago,* 760 F.2d 765, 767 (7th Cir.1985) (citation omitted). In considering the RTC's motion to dismiss, we apply these principles to the various allegations in plaintiffs' complaint.

There are three allegations/issues that we consider on this motion. For each, we must determine whether the issue is appropriately decided by this Court rather than by the arbitrator, and if this Court is to decide, then whether the plaintiffs have stated facts sufficient to support their claim.

### A. Improper Party

■ Plaintiff Anne Hennessy was the account executive at Manufacturers Hanover who managed Santa Barbara's account. In their complaint, plaintiffs allege that "RTC had no basis for including Hennessy in its purported arbitration proceeding because she is not a party to the arbitration agreement." Plaintiffs argue that Hennessy did not sign the Arbitration Agreement and has taken no action indicating her consent to arbitrate. Plaintiffs claim that Hennessy therefore cannot be compelled to arbitrate.

It is an issue for this Court whether a particular party has agreed to arbitrate a particular dispute. *Butler Products Co. v. Unistrut Corp.,* 367 F.2d 733, 735 (7th Cir. 1966) (citations omitted). Because arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which she has not indicated her consent to submit, we find that plaintiffs have stated a claim upon which relief can be granted as to Hennessy. *Interocean Shipping Co. v. National Shipping & Trading Corp.,* 523 F.2d 527, 539 (2d Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *Butler Products,* 367 F.2d at 735; *CBS, Inc. v. Snyder,* 798 F.Supp. 1019, 1024–27 (S.D.N.Y.1992), *aff'd,* 989 F.2d 89 (2d Cir.1993). The cases cited by the RTC are distinguishable either because the courts were not compelling arbitration without consent, *see e.g., Arnold v. Arnold Corporation–Printed Communications for Business,* 920 F.2d 1269, 1281 (6th Cir. 1990), or because the nonsignatory by seeking damages under the contract had adopted the contract's arbitration provision and could be bound by it, *see e.g., In re Oil Spill by the "Amoco Cadiz",* 659 F.2d 789, 795–96 (7th Cir.1981).

**B. Waiver**

 Waiver is an issue decided by the court prior to arbitration. *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 712 F.2d 270, 272 (7th Cir.1983). After considering the issue, we find that plaintiffs have failed to allege facts sufficient to support a claim that RTC has waived its right to arbitration.

Plaintiffs allege no action taken by the RTC that could be deemed inconsistent with a desire to arbitrate. *Zechman v. Merrill Lynch, Pierce, Fenner & Smith,* 742 F.Supp. 1359, 1366 (N.D.Ill.1990) (stating that in order to find waiver, a court must look for actions inconsistent with the arbitration right). RTC filed a demand for arbitration. It is plaintiffs who now seek to delay the arbitration proceeding by bringing this action in court.

Plaintiffs claim, however, that they have been prejudiced by discovery taken by the RTC because that discovery unfairly gave the "RTC an advantage which plaintiffs do not have, and which RTC would not otherwise have, in arbitration." Plaintiffs cite the RTC's "extensive pretrial merits discovery, including judicial compulsion of testimony from plaintiffs." [5]

We disagree that the plaintiffs have been prejudiced by the RTC's actions. Although extensive judicial discovery may support a finding of prejudice, *e.g., In re application of ABN Int'l Capital Markets Corporation,* 812 F.Supp. 418, 420 (S.D.N.Y.1993), the discovery alleged by plaintiffs was conducted pursuant to 12 U.S.C.A. §§ 1818(n) (West 1989) and 1821(d)(2)(I) (West Supp.1993). Those sections entitle the RTC to conduct factual investigations in connection with the assertion of claims on the behalf of a failed institution.[6] The RTC was not a party to plaintiffs'

alleged fraudulent acts, and only through its discovery was it able to conclude that it possessed a colorable claim against the plaintiffs. Plaintiffs cannot complain that being required to cooperate in an administrative investigation caused it prejudice. Such an investigation by a regulatory agency is a foreseeable part of doing business with a federally insured and regulated entity.

Waiver of arbitration is not to be lightly inferred. *Morrie & Shirlee Mages Foundation v. Thrifty Corp.,* 916 F.2d 402, 405 (7th Cir.1990) (quoting *Midwest Window Systems, Inc. v. Amcor Indus., Inc.,* 630 F.2d 535, 536 (7th Cir.1980)). Accordingly, we determine that plaintiffs have not met their burden in stating a colorable claim of waiver, and the RTC's motion to dismiss on this ground is granted.

**C. Statute of Limitations**

 In their complaint, plaintiffs allege that the "RTC's demand for arbitration is barred by the applicable statute of limitations." Specifically, plaintiffs allege that the RTC is barred from bringing the first claim in its arbitration demand, a claim brought under the Commodity Exchange Act. The Commodity Exchange Act has a two-year statute of limitations. Plaintiffs point out that Santa Barbara's trading account was closed in August 1987, and that the RTC did not demand arbitration until April 1993. Thus, according to plaintiffs, the RTC brings its Commodity Exchange Act claim too late.

The contract at issue in this suit is governed by New York law. Under New York law, courts, not arbitrators, decide statute of limitations issues. *Paver & Wildfoerster v. Catholic High School Ass'n,* 38 N.Y.2d 669, 382 N.Y.S.2d 22, 24, 345 N.E.2d 565, 567

---

**5.** Plaintiffs' complaint makes the following allegation regarding waiver:

RTC's extensive pretrial discovery going to the merits of its claim, using court-enforceable subpoenas to subpoena records and take oral discovery depositions, including depositions of the former employees of MJFI, was inconsistent with arbitration and gave RTC an undue advantage over plaintiffs in any arbitration, where they would not have the same ability as RTC has already had to take discovery, and where their employees would otherwise not

have to give depositions prior to a hearing. As a result of these actions taken by RTC, plaintiffs have been severely prejudiced, and RTC has waived any right it may have had to institute arbitration proceedings against plaintiffs.

**6.** Moreover, the RTC's authority to conduct a factual investigation, including the use of administrative subpoena authority, may "not be construed as limiting any rights that the [RTC], in any capacity, might otherwise have...." 12 U.S.C.A. § 1821(d)(2)(I)(iii).

(1976); *In re Application of Kohn Pederson Fox Assoc., P.C.,* 189 A.D.2d 557, 592 N.Y.S.2d 16 (1993). Because parties may make state arbitration rules applicable by including a state choice of law clause in their contract, *Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), New York law applies in this instance, and as a result, this Court is compelled to decide the statute of limitations issue presented by plaintiffs. *See also Mastrobuono v. Shearson Lehman Hutton Inc.,* 812 F.Supp. 845 (N.D.Ill.1993).

Having so decided, we determine that plaintiffs have stated a claim upon which relief can be granted as to the RTC's claim based on the Commodity Exchange Act.[7] Plaintiffs therefore may proceed to litigate this issue.

## CONCLUSION

For the reasons stated above, RTC's motion to dismiss based on improper venue and lack of subject matter jurisdiction is denied, and its motion to dismiss based on failure to state a claim is denied in part and granted in part.

---

**7.** Although plaintiffs imply that other claims made by the RTC are barred by other statutes of limitations, plaintiffs fail to specify which claims are so barred.