OPINION OF THE COURT
Harold B. Beeler, J.
*639 Petitioner Nomura Securities International, Inc. (NSI) moves for a permanent stay of arbitration pursuant to CPLR article 75. The critical issue raised by the motion is whether the timeliness of the arbitration claim of respondent CIBC World Markets Corporation should be determined by this court or by the arbitrator.
Facts
The dispute in this case arises from the sale of Mexico Series A bonds without their related value recovery rights (VRRs). VRRs are derivative securities of the Mexican bonds. On October 8, 1998, NSI bought at a discount $34.8 million of the bonds without receiving their related VRRs. On the same day, NSI sold the bonds to CIBC and delivered them without the VRRs. At the time of the transaction between petitioner and respondent, the VRRs had no value but offered the possibility of an increase in value subject to payments by Mexico of dividends should the price of oil increase. CIBC subsequently sold the bonds to Lehman Brothers Inc., which in turn sold the bonds to Daiwa Securities America Inc. All transactions lacked the related VRRs.
After Mexico began payments on the VRRs in 2000, CIBC demanded from NSI 53,538,000 VRRs and all dividend payments that may have been made on the VRRs. NSI rejected CIBC’s demand. In March 2004, Daiwa commenced an arbitration against Lehman before the New York Stock Exchange (NYSE) for failing to deliver 103,506,000 VRRs. Lehman subsequently added CIBC as a third-party respondent to the arbitration. On October 25, 2004, CIBC commenced the arbitration claim against NSI by the filing of a fourth-party statement of claim against it. NSI has not filed an answer or otherwise participated in the arbitration.
Discussion
The requirement that the controversy between the parties herein be arbitrated arises not out of any arbitration clause contained in a contract between them regarding the sale of the Mexican bonds, but because both are member firms of the NYSE. Article XI, § 1 of the NYSE Constitution provides for such mandatory arbitration as follows:
“Any controversy between parties who are members, allied members or member organizations . . . arising out of the business of such member, allied *640 member or member organization . . . shall at the instance of any such party be submitted for arbitration in accordance with the provisions of this Constitution and such rules as the Board may from time to time adopt.”
Petitioner seeks a permanent stay of the arbitration, pursuant to CPLR 7502 (b) and 7503 (b), on the ground that had the claim sought to be arbitrated been brought in a court of this state, the statute of limitations would require its dismissal as time-barred. In that regard, petitioner contends that the gravamen of respondent’s claim is the alleged failure on NSI’s part to deliver the related derivative securities to CIBC at the time of the October 8, 1998 bond transaction between the parties. More than six years having elapsed between the time of the accrual of respondent’s claim on October 8, 1998 and October 25, 2004, the date CIBC brought its claim against NSI before NYSE, petitioner argues that respondent’s claim is untimely whether it be cast as one for breach of contract (six-year statute of limitations pursuant to CPLR 213 [2]) or one for conversion (three-year statute of limitations pursuant to CPLR 214 [3]).
Pursuant to New York law, statutory time limitations are for the courts to decide. A threshold question for courts in New York is whether “the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state.” (CPLR 7502 [b]; see also CPLR 7503 [b].) “Clearly, under New York law, statutory time limitations questions . . . are for the courts, not the arbitrators.” (Matter of Smith Barney, Harris Upham & Co. v Luckie, 85 NY2d 193, 202 [1995].)
The NYSE Constitution, the source of the agreement to arbitrate, does not contain an explicit choice-of-law provision that arbitration between its members be governed by New York law. Petitioner argues, nonetheless, that New York law applies to this contract dispute under common-law choice-of-law principles because the parties, discussions and dealings in the underlying bond transaction were centered in New York City. (See Matter of Allstate Ins. Co. [Stolarz — New Jersey Mfrs. Ins. Co.], 81 NY2d 219, 226-227 [1993] [applying the “center of gravity” or “grouping of contacts” approach to resolve choice-of-law issues in contract actions].) Therefore, according to petitioner, this court applying New York law is the proper forum to resolve the threshold question as to whether respondent’s claim is time-barred from arbitration. (Matter of Bowes & Co. of N.Y. v American Druggists’ Ins. Co., 61 NY2d 750, 752 [1984] *641 [where “the demand (for arbitration) was served . . . more than six years after the date of the . . . contract and more than two years after respondent learned of the irregularities upon which it now bases its claim of fraud in the inducement!; t)he Appellate Division was, therefore, correct in staying arbitration of the demand for rescission”].)
Respondent contends that federal law applies to the arbitration at issue because the Federal Arbitration Act (FAA) governs the disputed bond transaction. The FAA governs disputes arising out of a contractual provision to arbitrate in a transaction “involving commerce” (9 USC § 2), a term the United States Supreme Court has read broadly. (Allied-Bruce Terminix Cos. v Dobson, 513 US 265, 273-274 [1995] [“After examining the (FAA’s) language, background, and structure, we conclude that the word ‘involving’ is broad and is indeed the functional equivalent of ‘affecting’ ”].) Disputes pertaining to security transactions clearly “affect commerce” and are hence governed by the FAA. (See Matter of Smith Barney Shearson v Sacharow, 91 NY2d 39 [1997]; Prime Charter v Kapchan, 287 AD2d 419 [1st Dept 2001].)
Federal law ordinarily allows courts only to determine the “question of arbitrability,” whether or not the parties have agreed to arbitrate and whether the dispute falls within the scope of the contract’s arbitration clause. (Howsam v Dean Witter Reynolds, Inc., 537 US 79, 83-84 [2002].) Questions concerning the timeliness of a demand for arbitration are to be determined by the arbitrator unless the parties agree by the express language of the arbitration agreement to refer that issue to the court. (Conticommodity Servs. Inc. v Philipp & Lion, 613 F2d 1222, 1225 [2d Cir 1980] [“(T)he policy considerations underlying the Federal Arbitration Act( ) support the view that the validity of time-bar defenses to the enforcement of arbitration agreements should generally be determined by the arbitrator rather than by the court”].) Respondent argues that the parties have agreed by virtue of their membership in the NYSE to arbitrate “any controversy” arising out of their business relationship and thus intended to submit the issue of timeliness to the arbitrator rather than to the court.
In arguing that New York law, rather than federal law, applies to the enforcement of the arbitration requirement, petitioner relies primarily on Luckie where the New York Court of Appeals considered two arbitration agreements involving securities transactions governed by the FAA. The Court of Appeals *642 recognized that governing federal law under the FAA would ordinarily preclude a court from considering the statute of limitations or timeliness of the arbitration claim. The Court concluded, however, that the choice-of-law clause in the securities agreements, providing that the “agreement and its enforcement” shall be governed by the laws of New York, established the parties’ clear intention to follow the rule that the application of the statute of limitations is a question for the courts to determine. (Luckie, 85 NY2d at 202.) “New York’s rule permitting the courts to address Statute of Limitations defenses to arbitration where the parties so choose in no way interferes with the parties’ contractual freedom to choose arbitration or even to choose arbitration ‘under applicable state rules’ — the overarching goal of the FAA.” (Id. at 206.) New York’s rule was, in fact, advancing the federal policy of “ensur[ing] the enforceability, according to their terms, of private agreements to arbitrate.” (Id., quoting Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford Junior Univ., 489 US 468, 476 [1989].)
Respondent argues that Luckie is no longer good law in light of the 2002 United States Supreme Court Howsam decision. Howsam held that the application of a National Association of Securities Dealers (NASD) rule implementing a time limit on submission of disputes to an arbitrator was a matter presumptively for the arbitrator to decide. The court distinguished between threshold issues of “substantive arbitrability” for a court to decide and those of other “gateway matters,” referred to as issues of “procedural arbitrability,” which presumptively are for the arbitrator to resolve. (Howsam, 537 US at 85-86.) The relatively narrow category of substantive arbitrability includes disputes about “whether the parties are bound by a given arbitration clause” and “whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.” (Mulvaney Mech., Inc. v Sheet Metal Workers Intl. Assn., Local 38, 351 F3d 43, 45 [2d Cir 2003], quoting Howsam at 84.) The second category of other gateway matters, including issues of procedural arbitrability such as time limits, notice, laches, estoppel, and other conditions precedent, are for the arbitrators to decide. (Howsam at 85.) The Howsam court found that disputes pertaining to NASD’s contractual time limitations were questions of “procedural arbitrability” and, therefore, for the arbitrator to interpret and apply.
Respondent contends that Howsam directs that, where the FAA is involved, all time limitation issues, including the ap *643 plication of New York’s statute of limitations, be determined by the arbitrator as issues of “procedural arbitrability” and that, therefore, Luckie is no longer viable and CPLR 7502 (b) and 7503 (b) are preempted in this case.
After the motion papers were submitted in this case and oral argument held, the Court of Appeals in Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp. (4 NY3d 247 [2005]) resolved the continued viability of Luckie in light of Howsam. Diamond Waterproofing concerned a contract for the repair and reconstruction of a Manhattan residential building, which contract contained an arbitration clause. The issue was whether the court or the arbitrator should determine the applicability of the statute of limitations to the arbitration demand.
While the Court of Appeals accepted the general rule of Howsam that conditions precedent to arbitration such as time limits, notice, and estoppel were presumptively for the arbitrator to determine, it maintained Luckie’s exception to the rule that allows the parties to submit timeliness issues to the court provided that the governing contract’s choice-of-law provision explicitly reflected the parties’ intent to do so. (Id. at 252-253.) However, the Court held that such an intent was lacking in the absence of language in the choice-of-law provision in the Diamond Waterproofing contract, present in the arbitration agreement in Luckie, that the enforcement of the arbitration agreement as well as the agreement itself be governed by New York law. Since the choice-of-law clause in the parties’ agreement at issue in Diamond Waterproofing lacked the critical language concerning the enforcement of the agreement and provided only that “[t]he Contract shall be governed by the law of the place where the Project is located,” the Court affirmed the denial of the petition to stay arbitration, holding that the statute of limitations issue was for the arbitrator to decide. (Id. at 253; see also Merritt Eng'g Consultants, P.C. v 55 Liberty Owners’ Corp., 18 AD3d 210, 210-211 [1st Dept 2005] [related case to Diamond Waterproofing] [“The timeliness of respondent’s claims is for determination by the arbitrators, not the court, given the parties’ decision to submit to arbitration all claims and disputes arising out of or relating to the agreement, and that the choice-of-law clause therein does not expressly provide that the agreement and its enforcement would be governed by New York law”].)
The decision in Diamond Waterproofing is in accord with Matter of Smith Barney Shearson v Sacharow (supra), where the *644 Court of Appeals held that the timeliness of a claim for arbitration under the NASD Code of Arbitration Procedure was for the arbitrator to determine, distinguishing Luckie in part on the ground that the choice-of-law provision in Sacharow only provided that the agreement was to be governed by New York law without also providing that its enforcement shall be so governed.
NSI relies upon a “significant contacts” analysis in arguing for the application of the New York rule that the threshold issue of the statute of limitations is for the court to decide. Its reliance upon common-law choice-of-law principles alone is insufficient to invoke CPLR 7502 (b) and 7503 (b) in light of Diamond Waterproofing. Given the parties’ decision to arbitrate any controversy arising out of their business relationship by virtue of their membership in the NYSE and the absence of an express choice-of-law provision that New York law governs the enforcement of the agreement to arbitrate, petitioner has failed to overcome the presumption that the arbitrator is to determine the timeliness issue.
Accordingly, petitioner’s motion for a permanent stay of arbitration is denied.