■ In the Matter of the Arbitration between CLINTON GLENN, Appellant, and M. NEIL REDFORD, Respondent. [650 NYS2d 128] —Order of the Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered on or about July 11, 1995, which, in a proceeding to stay arbitration, granted respondent's motion to confirm a Special Referee's report and denied petitioner's cross-motion to reject the report of the Special Referee and stay arbitration, unanimously reversed, on the law and the facts, without costs, the order vacated, and the matter remanded for further proceedings.

On July 12, 1990, petitioner Clinton Glenn purchased from respondent M. Neil Redford all shares of Bell Redford Glenn, Inc. (BRG), a subchapter "S" corporation. Under the terms of the stock purchase agreement, Redford resigned as president and secretary of BRG and was elected chairman of the corporation's board of directors; Glenn became the president, chief executive, and chief administrative officer of the corporation, with sole authority for its daily operations. Also on July

12, 1990, Glenn and BRG entered into an employment agreement by which Glenn was to be paid an annual salary of $72,000, as well as reasonable and necessary business expenses; he was also eligible for an annual bonus determined by the board; all compensation and benefits owed to Glenn or to any other employee were "due and payable before any other obligations of the Corporation unless superseded by law or Statute." Finally, Redford entered into a separate consulting agreement with BRG, pursuant to which he would provide and be compensated for consulting services. That agreement provided that any controversy or claim arising out of or relating to this agreement, or its breach, would be settled by arbitration in New York City in accordance with the commercial arbitration rules of the American Arbitration Association. A like provision was included in Glenn's employment agreement.

In April 1992, Redford commenced an arbitration proceeding against Glenn and BRG, seeking payments owed him under the consulting agreement; two months later, Supreme Court stayed that proceeding against Glenn individually. At a special meeting held in January 1993, the BRG board of directors—consisting solely of Glenn—removed Redford as chairman and placed Glenn in his stead. In July 1993, the arbitrator issued a partial award against BRG, requiring it to submit financial reports to the arbitrator; BRG provided only a limited response to this order. In October 1993, the arbitrator issued a final award requiring BRG to pay Redford $227,109.25, and to produce accountant's worksheets and check stubs for 1992. The arbitrator also retained jurisdiction for the purpose of hearing the remaining disputes which might arise out of the parties' agreement. BRG subsequently changed its corporate name to SGL and petitioned unsuccessfully for bankruptcy protection; it appears that BRG/SGL neither paid the award nor complied with the arbitrator's direction to turn over documents. The monetary award to Redford was confirmed by Supreme Court in August 1994.

At Redford's request, and over Glenn's opposition, the arbitrator added Glenn as a party to the arbitration proceeding in May 1994, and scheduled a hearing to commence in July 1994 to determine whether Glenn should be held personally liable for the judgment against the corporation. Denying Glenn's motion to stay this arbitration on grounds of collateral estoppel, Supreme Court ruled that Redford was not barred by the June 1993 decision from seeking to add Glenn as a party to the arbitration under a theory that BRG's corporate veil should be pierced. Since Glenn had not appeared in the arbitration

proceeding to date, however, the court declined to let stand the arbitrator's decision to add him as a party. Instead, the court referred to a Special Referee the question of "whether the petitioner [Glenn] conducted his affairs in such a manner as to warrant that the corporate veil of his corporations should be pierced".

At a hearing before the Special Referee, Redford alleged that Glenn's power and duties as sole shareholder, president and chief executive officer from 1990 onwards, as well as his power as chairman and sole member of the board after January 1993, evidenced domination of the corporation; he further alleged that Glenn's actions in the removal of Redford from the BRG board of directors, the withholding of documents ordered produced by the arbitrator, the receipt of compensation in excess of $72,000 in 1992 and 1993,[1] the decision to file for bankruptcy, and the change of the corporation's name caused him harm by, *inter alia,* diminishing the corporation's ability to meet its obligations under the arbitration award of October 1993. When Redford's attorney attempted to question Glenn about these claims, Glenn's attorney successfully objected, apparently under the erroneous impression that the scope of the hearing was limited to a determination of whether Glenn treated the corporation as his alter ego.[2] Even when Redford's attorney inquired into Glenn's salary pursuant to the employment agreement, that inquiry was met with objection, and the issue was deemed irrelevant. Glenn also successfully objected to Redford's inquiry into other subjects purportedly relevant to Glenn's fraud, such as the corporation's balance sheets and assets of the corporation or Glenn's current employment. At the close of Redford's case, Glenn, apparently believing that respondent had failed to carry his burden of proof, rested without submitting additional testimony. He made no effort to explain his corporate compensation at the hearing, or to submit the employment agreement into evidence.

1. According to financial records admitted into evidence at the hearing, Glenn received no salary in 1990 or 1991; the corporation reported receipts of $549,885 with a net income of $15,321 in 1990; and receipts of $486,813 with a net income of $3,642 in 1991. Glenn received compensation amounting to $120,000 in 1992, and $85,417 in 1993; the corporation reported receipts of $728,684 with a net loss of $235 in 1992; and receipts of $681,202 with a net loss (including the arbitration award, deducted under the accrual accounting method) of $209,268, in 1993.

2. As Glenn's counsel noted early in the proceeding: "My understanding is, we are here on a question of whether or not the corporate veil should be pierced. The only relevant evidence to that is whether or not Mr. Glenn treated this company as his alter ego and what facts [respondent's counsel] can come forward with in that regard."

On February 15, 1995, the Special Referee issued a report concluding that Glenn had received excessive compensation in 1992 and 1993, had arbitrarily removed Redford as a director of BRG in January 1993, and had evidenced self-dealing and dominion over the corporation, and recommending that the corporate veil be pierced. Redford moved to confirm the report, alleging in his motion that Glenn was operating the business of BRG/SLG under another corporation, and further requesting the operating statements ordered by the arbitrator in October 1993. Glenn cross-moved to reject the report or to return the matter to the Special Referee for a "further and more complete hearing on the issue at hand", arguing for the first time, *inter alia*, that Glenn's salary was in accord with the employment agreement and placing that agreement into the record. Rejecting Glenn's arguments, Supreme Court confirmed the report in a memorandum decision and order dated June 4, 1995, added Glenn as a party to the arbitration, and ordered that the scope of Glenn's personal liability for fraud, if any, should be decided by an arbitrator at a later date. Glenn appealed.

We reverse. Piercing the corporate veil requires a showing that the controlling party exercised complete dominion over the corporation during the transaction or transactions at issue, and used that power to commit fraud or other dishonest acts which resulted in injury to the complainant (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141). While respondent's claim that Glenn dominated the BRG and caused it to commit fraud against him in the period following the issuance of the October 1993 arbitration award, including claims that Glenn was paid excessive compensation and allegedly continued operation of the corporation in another entity as part of a scheme to strip the corporation of its assets to avoid paying the judgment owed Redford, might establish sufficient grounds for piercing the corporate veil of BRG/SLG (*see, Chase Manhattan Bank v 264 Water St. Assocs.*, 174 AD2d 504), the record in the instant matter, bereft of necessary documentation and filled with innuendo and unanswered questions, simply does not support the court's finding of fraudulent conduct by petitioner warranting disregard of the corporate form. Although Glenn was paid in excess of $72,000 per year in 1992 and 1993, whereas he had received no salary before Redford's commencement of the arbitration proceeding, payment of that salary obligation may have been justified—indeed required—under the terms of Glenn's employment agreement, drafted and executed at a time when Redford was the president and sole shareholder of the corporation. Moreover, there

is no affirmative indication in the record that Redford's removal from the board of directors was an instance of fraudulent or dishonest conduct. Yet because the Special Referee improperly curtailed inquiry into Redford's allegations of misconduct at the hearing, these and other relevant matters could not be fully explored. Consequently, we reverse the order of the Supreme Court and remand for further factual findings on the claims of fraud and harm.[3] Concur—Murphy, P. J., Sullivan, Rubin, Ross and Williams, JJ.

---

**3.** In the interests of judicial economy, we note that the court and the parties might consider the procedures suggested in *McAllister Bros. v A & S Transp. Co.* (621 F2d 519, 524) in this matter.