■ HELEN M. ROSPLOCK, Respondent, v UPSTATE MANAGEMENT ASSOCIATES, INC., et al., Appellants, et al., Defendants. [968 NYS2d 706]—

Rose, J. Appeal from that part of an order of the Supreme Court (Mulvey, J.), entered January 31, 2012 in Broome County, which denied defendants' cross motion to, among other things, dismiss the complaint.

Plaintiff was a director, officer and shareholder of defendant Upstate Management Associates, Inc. when she loaned it $50,000 in 2001, taking back two promissory notes payable on demand. Upstate, which did business as "the Bay Ridge Group," sold and administered employee benefit plans, provided personal investment and financial planning services, and administered a multiple employer trust known as the "BRG Trust," which offered employee benefit plans at reduced rates. Plaintiff sold her shares of stock back to Upstate in 2002 and resigned as director and officer pursuant to written stock redemption and consulting agreements. These agreements provided for monthly payments to plaintiff over a period of 10 years totaling approximately $1 million. The redemption agreement also included a general release of all of plaintiff's claims against Upstate as well as a provision for arbitration of disputes concerning the agreement.

At the time plaintiff left Upstate, the corporation was facing potential uninsured liability as a result of two federal court actions that had been brought against it. These lawsuits were precipitated by an error allegedly committed by defendant Robert M. Sedor Jr., another director, officer and shareholder of Upstate. Thereafter, in 2003, Sedor and another formed defendant the Bay Ridge Group, Inc. (hereinafter BRG) and, in 2005, Sedor formed defendant the Bay Ridge Group Advisory Services, Inc. (hereinafter BRGAS). Following a series of transactions, Sedor became the sole shareholder of Upstate, BRG and BRGAS, and each of the new corporations utilized the Bay Ridge Group name under which Upstate did business, adopted Upstate's logo and operated out of its offices. In 2007, Sedor sold BRG and BRGAS to defendant National Financial Partners Corp. (hereinafter

NFP) and, with two other employees of Upstate as minority shareholders, he formed defendant the Bay Ridge Group Management Company, Inc. (hereinafter BRGM), which then signed a management agreement with NFP to manage the business of BRG and BRGAS. As one of the terms of the sale of BRG and BRGAS to NFP, Sedor agreed that Upstate would no longer transact any business and that he would dissolve it following the resolution of the two pending federal court actions.

In January 2008, Sedor told plaintiff that Upstate's financial position was precarious. He attributed the problem to the two lawsuits and sought to settle Upstate's outstanding obligations to her by offering to pay her a reduced lump-sum amount. Plaintiff declined, indicating in an email that the amount offered fell seriously short of what was due under the terms of the agreements and the demand notes. She then called the demand notes. In further correspondence with plaintiff, Sedor indicated that Upstate was attempting to pursue financing to resolve her claims. In May 2009, however, Upstate ceased making the monthly payments owed to plaintiff pursuant to the redemption and consulting agreements and, in September 2009, counsel for Upstate notified plaintiff that the general release clause in the redemption agreement had discharged any claims based on the demand notes.

Plaintiff thereafter commenced this action against, among others, Sedor, Upstate, BRG, BRGAS, BRGM, NFP and a subsidiary of NFP identified as NFP Securities, Inc. (hereinafter collectively referred to as defendants) asserting causes of action for breach of contract, failure to pay the demand notes and reformation of the release clause in the redemption agreement based upon mutual mistake. In addition, plaintiff asserted a theory of de facto merger as a basis for liability of BRG, BRGAS and BRGM as successors to Upstate. She also sought to impose liability on Sedor, NFP and NFP Securities for disregarding the corporate form of their ownership of Upstate and/or its alleged successor corporations. After joinder of issue, plaintiff moved for an order compelling defendants to respond to her discovery demands. Defendants then cross-moved to dismiss the complaint based on the release of the demand notes, failure to state a cause of action against Sedor, BRG, BRGAS, BRGM, NFP and NFP Securities, and to dismiss the reformation cause of action based on the statute of limitations. Defendants also sought to compel arbitration and to stay the action pending arbitration.

Supreme Court denied defendants' cross motion, concluding that the complaint adequately stated a cause of action for reformation and that the allegations sufficiently supported the de

facto merger and piercing of the corporate veil theories of liability. The court also concluded that the record was insufficient to determine whether the statute of limitations defense to the reformation claim was applicable, but denied discovery and granted that part of the cross motion seeking to compel arbitration and to stay the action pending its completion. Defendants appeal.

The parties now agree that, prior to compelling or staying arbitration, Supreme Court must determine certain threshold issues, including the question of whether each of the parties made a valid agreement to arbitrate (*see* CPLR 7503 [a]; *Matter of Smith Barney, Harris Upham & Co. v Luckie*, 85 NY2d 193, 201-202 [1995], *cert denied sub nom. Manhard v Smith Barney, Harris Upham & Co., Inc.*, 516 US 811 [1995]; *Matter of County of Rockland [Primiano Constr. Co.]*, 51 NY2d 1, 6-7 [1980]). Because Sedor, BRG, BRGAS, BRGM, NFP and NFP Securities are nonsignatories to the agreement, plaintiff's theories of de facto merger and piercing the corporate veil must first be resolved in order to determine whether these defendants can be compelled to arbitrate as the alter egos of Upstate (*see TNS Holdings v MKI Sec. Corp.*, 92 NY2d 335, 339 [1998]; *Matter of Pile Found. Constr. Co. [Howell Co.]*, 159 AD2d 352, 353 [1990]; *Matter of Sbarro Holding [Shiaw Tien Yuan]*, 91 AD2d 613, 614 [1982]).

Plaintiff's de facto merger theory is based on her claim that Sedor improperly transferred Upstate's business and assets to BRG, BRGAS and BRGM (hereinafter collectively referred to as the Bay Ridge Group) such that the corporations should be considered to have effectively merged, making the Bay Ridge Group responsible for Upstate's obligations (*see State Farm Fire & Cas. Co. v Main Bros. Oil Co.*, 101 AD3d 1575, 1578 [2012]; *Holme v Global Mins. & Metals Corp.*, 90 AD3d 423, 424 [2011]; *Simpson v Ithaca Gun Co. LLC*, 50 AD3d 1475, 1476 [2008], *lv denied* 11 NY3d 709 [2008]). Factors to be considered in determining whether a de facto merger has occurred include whether there was any continuity of ownership, management, personnel, physical location, assets or general business operations (*see State Farm Fire & Cas. Co. v Main Bros. Oil Co.*, 101 AD3d at 1578). As for the theory of piercing the corporate veil in order to circumvent the limitations on the liability of the owner of a corporation, it will be applicable only if the owner completely dominated the corporation with respect to the transaction attacked and used that domination to commit a wrong against plaintiff, resulting in her injury (*see Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141

[1993]; *State of New York v Robin Operating Corp.*, 3 AD3d 769, 771 [2004]; *Austin Powder Co. v McCullough*, 216 AD2d 825, 826 [1995]).

In support of these two theories, plaintiff alleges that Sedor diverted the lucrative business of Upstate to his newly formed companies. Plaintiff relies on evidence reflecting Sedor's sole ownership of BRG and BRGAS, his control of BRGM and the apparent continuity of the Bay Ridge Group name, physical address, key personnel, signs, logos, website and other marketing materials between Upstate and the Bay Ridge Group. Plaintiff submitted exhibits reflecting the similar marketing materials used by Upstate and the Bay Ridge Group, and she identified clients of Upstate that now allegedly do business with the Bay Ridge Group. She also alleges that, since the 2007 sale of BRG and BRGAS to NFP, BRGM has conducted Upstate's former business, and Sedor, as the sole trustee of the BRG Trust, has moved its business from Upstate to the Bay Ridge Group. Plaintiff points to the drastic decrease in Upstate's income as compared to the significant increase in the value of the Bay Ridge Group over a short period of time, as reflected in the sale price of BRG and BRGAS to NFP in 2007, and she alleges that Sedor has committed a wrong against her, resulting in her injury, by diverting Upstate's business and reducing its capital so as to make it unable to meet its obligations to her (*see e.g. Matter of Glenn [Redford]*, 233 AD2d 248, 251 [1996]; *Austin Powder Co. v McCullough*, 216 AD2d at 827).

While Sedor denies that he diverted Upstate's business, plaintiff has set forth sufficient factual allegations to warrant a hearing to determine whether Sedor and/or any of the Bay Ridge Group are bound by Upstate's agreement to arbitrate (*see State Farm Fire & Cas. Co. v Main Bros. Oil Co.*, 101 AD3d at 1579; *Beesmer v Besicorp Dev., Inc.*, 72 AD3d 1460, 1462 [2010]; *Matter of Pile Found. Constr. Co. [Howell Co.]*, 159 AD2d at 353). Accordingly, there should be additional disclosure as may be determined to be material and necessary by Supreme Court, and the alter ego theories of de facto merger and piercing the corporate veil should then be resolved by Supreme Court in an evidentiary hearing in order to determine whether any of these parties can be compelled to arbitrate (*see* CPLR 7503 [a]; *Matter of Schreiber v K-Sea Transp. Corp.*, 9 NY3d 331, 340-341 [2007]; *see also Matter of Local 832 Term. Empls. of City of N.Y. v Department of Educ. of City of N.Y.*, 60 AD3d 567, 569-570 [2009]; *Madison Hill Corp. v Continental Baking Co.*, 21 AD2d 538, 542-543 [1964]).

Plaintiff does not, however, offer any factual allegations sug-

gesting that NFP caused her any injury as part of its alleged domination and control of Upstate or the Bay Ridge Group after the 2007 transaction with Sedor. Nor does plaintiff identify any similar allegations regarding NFP Securities. Absent specific factual allegations suggesting a basis to pierce the corporate veil against NFP or NFP Securities, the cross motion to dismiss the claim against them should have been granted (*see Beesmer v Besicorp Dev., Inc.*, 72 AD3d at 1462; *see also State of New York v Robin Operating Corp.*, 3 AD3d at 771).

Next, while we agree with Supreme Court that the question of whether the general release in the redemption agreement applies to the demand notes is for the arbitrator to decide, defendants correctly argue that the threshold issue of whether the cause of action to reform the release is barred by the statute of limitations must first be resolved by the court. Based upon Sedor's alleged acknowledgment of the debt as recently as 2008, plaintiff argues that General Obligations Law § 17-101 voids any statute of limitations defense against the reformation cause of action and, relatedly, that defendants may not equitably raise the statute of limitations as a defense. Although plaintiff did not expressly cite "equitable estoppel" as an argument in opposition to defendants' cross motion, we are persuaded that she nevertheless squarely presented the issue to Supreme Court by arguing that Sedor's alleged acknowledgment of the debt precluded defendants' claim that the reformation cause of action was time-barred (*see generally Geraci v Probst*, 15 NY3d 336, 342 [2010]).

Inasmuch as plaintiff argues that the alleged acknowledgment of the debt within six years of the commencement of the action supports her claim of mutual mistake upon which she bases her reformation cause of action, and she does not—as defendants assert—seek to revive released claims, we do not read General Obligations Law § 17-101 to be inapplicable. Nor do we find any authority precluding General Obligations Law § 17-101 from being applied in breach of contract actions that include claims for reformation such as this. Thus, we conclude that defendants' reading of the statute is much too narrow, and we remit for a hearing to determine whether the statute of limitations applies to bar the claim for reformation (*see* CPLR 7502 [b]; *Matter of Smith Barney, Harris Upham & Co. v Luckie*, 85 NY2d at 202; *Matter of Paver & Wildfoerster [Catholic High School Assn.]*, 38 NY2d 669, 673-674 [1976]).

Peters, P.J., Stein and Garry, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as (1) denied that part of the cross motion seeking dis-

missal of the complaint against defendants National Financial Partners Corp. and NFP Securities, Inc., and (2) compelled arbitration and stayed the action; cross motion granted to said extent, complaint dismissed against said defendants, matter remitted to the Supreme Court for an evidentiary hearing to determine the proper parties to the arbitration agreement and the timeliness of the claim for reformation, and Supreme Court to then stay the action pending arbitration regarding the remaining claims and parties; and, as so modified, affirmed.