*197 OPINION OF THE COURT
Titone, J.
These two appeals arise from controversies concerning separate securities transactions undertaken by two securities brokers on behalf of two unrelated investors. The common issue presented is whether the Appellate Division in each case properly held that the timeliness of claims sought to be arbitrated pursuant to an agreement governed by the Federal Arbitration Act (FAA) is a question reserved to the arbitrators, notwithstanding the facts that each arbitration agreement contained a New York choice of law provision, and that, under New York law, Statute of Limitations questions are properly resolved by the courts (see, CPLR 7502 [b]). In light of the United States Supreme Court’s decision in Volt Information Sciences v Leland Stanford Jr. Univ. (489 US 468), we conclude that a determination by the court on the Statute of Limitations question offends neither the language of the FAA nor its underlying policies where the parties have mutually agreed that New York law shall govern the dispute. Accordingly, we reverse in each case and remit to the Appellate Division for a determination on the previously unaddressed Statute of Limitations questions.
I
Smith Barney
In 1989, respondent Doris Kahn commenced arbitration against petitioner Smith Barney, Harris Upham & Co.,[1] a national securities broker-dealer having its principal executive offices in New York, alleging Federal and State claims of *198 fraudulent and unsuitable sale of certain securities. Kahn, a Florida resident, made her Smith Barney investments exclusively through petitioner’s Florida offices, and terminated her account with petitioner in or about August 1984.
The governing customer agreement between Smith Barney and Kahn refers to and incorporates a Securities Account Agreement, which in turn contains an arbitration clause. The parties’ arbitration clause provides that "[a]ny controversy between Smith Barney and [Kahn] arising out of or relating to this contract or the breach thereof shall be settled by arbitration” and specifies the available arbitration fora. The arbitration clause is directly followed in the Securities Account Agreement by a New York choice of law provision, which states that "[t]his agreement and its enforcement shall be governed by the laws of the State of New York.”
The parties subsequently engaged in extensive State and Federal litigation to determine both the appropriate forum for arbitrating their dispute (see, Luckie v Smith Barney, Harris Upham & Co., 766 F Supp 1116 [MD Fla 1991], affd 999 F2d 509) and whether the arbitration is barred by the Statute of Limitations. In 1989, by special proceeding, petitioner Smith Barney sought an order in New York Supreme Court staying the arbitration before the National Association of Securities Dealers (NASD)[2] pursuant to CPLR 7503 and moved to dismiss Kahn’s claims pursuant to CPLR 7502 (b) on the ground, among others, that they were time-barred. Supreme Court granted a temporary stay of arbitration pending determination of the petition. The court ultimately denied the petition for a stay, ruling that Kahn’s claims were governed by New York’s six-year Statute of Limitations for fraud, and were timely filed. The Appellate Division affirmed the denial of the stay of arbitration on different grounds. The Court ruled that the Statute of Limitations question is one to be resolved by the arbitrators rather than the courts. Relying on the fact that "[t]he parties’ intention to resolve all disputes by arbitration [was] clear,” the Court reasoned that "dismissal of respondent’s claims pursuant to CPLR 7502 (b) would defeat the policies of the Federal Arbitration Act.” (198 AD2d 87.) Thus, the Court concluded that "the arbitrators should decide the *199 Statute of Limitations issue, including whether New York or Florida law applies” (id,., at 87). This Court granted Smith Barney’s motion for leave to appeal, but denied its motion for a stay of arbitration pending resolution of this appeal.
Merrill Lynch
In August 1992, respondent Margaret B. Manhard filed a claim in arbitration before the NASD in New York against petitioners Merrill Lynch, Pierce, Fenner & Smith, Inc., a national securities broker-dealer having its principal place of business in New York, and John R. DaCamara, a Merrill Lynch employee. Manhard alleged various Federal and State claims against petitioners arising out of certain investments made by Merrill Lynch on her behalf.
Arbitration was commenced in accordance with the terms of a customer agreement Manhard executed with Merrill Lynch. As in Smith Barney, the agreement provided that any controversy arising from the contract shall be settled by arbitration, and included a choice of law provision stating that "[t]his agreement and its enforcement shall be governed by the laws of the State of New York.”
On October 1, 1992, petitioners commenced this special proceeding in Supreme Court to permanently stay arbitration pursuant to CPLR 7502 and 7503 (b). Supreme Court granted petitioners a temporary stay of the arbitration pending a hearing on the petition. The petition contained allegations that all of Manhard’s claims were either ineligible for submission to arbitration under NASD Code of Arbitration Procedure § 15 — which precludes arbitration of claims based on transactions occurring more than six years prior to commencement of the arbitration — or were time-barred by applicable Federal or State Statutes of Limitations. Petitioners also argued that New York’s borrowing statute — CPLR 202[3] — required that the shorter of either New York’s or Virginia’s Statutes of Limitation applied. Thereafter, Manhard’s counsel conceded that all claims based upon transactions in her account that occurred more than six years prior to commencement of the arbitration were ineligible for arbitration, but maintained that the timeli *200 ness of her remaining claims was an issue reserved for the arbitrators. Manhard additionally argued that the New York borrowing statute was not an available bar to her claims because they "accrued” not in Virginia, the place of economic injury, but in New York, where the claim for arbitration was filed.
Supreme Court granted the petition and permanently stayed the arbitration. The Court ruled that pursuant to New York law, the Court was the proper forum to decide whether the claims were time-barred from arbitration. The Court then determined that New York’s borrowing statute applied, found that Manhard’s claims accrued in Virginia — the place of her economic loss — and held that the remaining claims were all time-barred.
The Appellate Division affirmed so much of Supreme Court’s order holding that claims based on transactions occurring more than six years prior to the filing were ineligible for arbitration pursuant to NASD rules and should be permanently stayed. However, the Court reversed on the Statute of Limitations issue, holding that because the parties made clear their intent to resolve all disputes by arbitration, "the policy of the Federal Arbitration Act requires that the applicability of a statute of limitations be decided by the arbitrators.” (201 AD2d 347.) We granted Merrill Lynch’s motion for leave to appeal, and granted its motion for a temporary stay of the Appellate Division order pending resolution of the appeal.
II
The Federal Arbitration Act (9 USC §§ 1-16) specifies that a written provision to arbitrate any controversy arising out of a "contract evidencing a transaction involving commerce” is valid and enforceable (see, 9 USC § 2).[4] The Act was designed to terminate "the judiciary’s longstanding refusal to enforce agreements to arbitrate” (Dean Witter Reynolds v Byrd, 470 US 213, 219-220). In enacting the FAA, Congress established a *201 Federal policy favoring arbitration agreements, which is to be advanced by rigorous judicial enforcement of arbitration agreements (Shearson/American Express v McMahon, 482 US 220) and by resolution of any "ambiguities as to the scope of the arbitration clause itself * * * in favor of arbitration” (Volt Information Sciences v Leland Stanford Jr. Univ., 489 US 468, 476, supra; Moses H. Cone Hosp. v Mercury Constr. Corp., 460 US 1, 24).
Notwithstanding the Federal policy favoring liberal enforcement of agreements to arbitrate, the FAA should not be construed to "confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed in the manner provided for in [the parties’] agreement’ ” (Volt Information Sciences v Leland Stanford Jr. Univ., 489 US, at 474-475, supra, quoting 9 USC §4 [emphasis added by Supreme Court]). In other words, in recognition of the fact that arbitration is manifestly a matter of contract, and that parties to an arbitration agreement — like all contracting parties — are free to select the terms under which they will arbitrate, the policy established by the FAA is to ensure that private agreements to arbitrate are enforced according to their terms (id., at 476). Accordingly, the parties are at liberty to include a choice of law provision in their agreement, and the parties’ choice will be honored unless the chosen law creates a conflict with the terms of, or policies underlying, the FAA (id.).
The parties to each of the appeals before us do not dispute that the customer agreements governing the securities transactions at issue are contracts "involving commerce”[5] within the realm of the FAA (see, Corey v New York Stock Exch., 493 F Supp 51, affd 691 F2d 1205, 1210 [6th Cir 1982]). The question we must resolve is whether New York arbitration law conflicts with the FAA on the question of the arbitrability of these Statute of Limitations disputes such that its application must be preempted.
Generally, under New York statutory and case law, a court may address three threshold questions on a motion to compel or to stay arbitration: (1) whether the parties made a valid *202 agreement to arbitrate; (2) if so, whether the agreement has been complied with; and (3) whether the claim sought to be arbitrated would be time-barred if it were asserted in State court (see, CPLR 7502 [b]; 7503; Matter of County of Rockland [Primiano Constr. Co.], 51 NY2d 1, 9, n 2). Clearly, under New York law, statutory time limitations questions such as those presented on these two appeals — as opposed to contractual time limitations agreed upon by the parties — are for the courts, not the arbitrators (see, Rockland, 51 NY2d, at 9, supra).
Undeniably, in the absence of an explicit choice of law provision, governing Federal law would have precluded the courts in the appeals before us from addressing the Statute of Limitations issue (see, Conticommodity Servs. v Philipp & Lion, 613 F2d 1222, 1224-1225 [2d Cir 1980]) or from issuing stays under our arbitration act (see, Matter of Rederi [Dow Chem. Co.] 25 NY2d 576, 585). However, the parties’ choice that New York law would govern "the agreement and its enforcement” (emphasis added) indicates their "intention to arbitrate to the extent allowed by [this State’s] law,” even if application of the State law — and an adverse ruling on a Statute of Limitations claim — would relieve the parties of their responsibility under the contract to arbitrate (Armco Steel Co. v CSX Corp., 790 F Supp 311, 318 [D DC 1991]; see also, Saturn Distrib. Corp. u Williams, 905 F2d 719 [4th Cir 1990] [parties are entitled to incorporate State law restrictions into their arbitration agreement that would otherwise be preempted by the FAA], cert denied 498 US 983; Flight Sys. v Laurence Co., 715 F Supp 1125 [D DC 1989]). Although the parties broadly agreed to arbitrate "any controversy” arising from the customer agreements, that clause — like all other provisions in the contract — was subject to the parties’ additional qualification that New York State law provides the basis of decision for questions concerning not only the agreement, but more critically, its enforcement. Accordingly, we conclude that under this agreement the parties agreed to refer questions of timeliness to the courts by incorporating New York law. In other words, when the parties chose to apply New York law, "without excluding its arbitration rules” from that general condition (Mastrobuono v Shearson Lehman Hutton, 20 F3d 713, 717 [7th Cir 1994], cert granted 514 US —, 115 S Ct 305), the parties adopted as binding New York’s rule that threshold Statute of Limitations questions are for the courts.
In light of our conclusion that the parties intended that *203 New York law govern the arbitration, the dispositive question for resolution of these appeals becomes whether, under standard Federal preemption analysis, the Federal Arbitration Act’s compulsory arbitration provisions and its underlying policies require that even those questions normally reserved to the courts pursuant to New York law must be resolved by the arbitrators, notwithstanding the presence of a New York choice of law provision in the agreement to arbitrate.
First, the provisions of CPLR 7502 (b)[6] and 75Q3[7] authorizing the courts to consider a time limitation asserted as a bar to arbitration in connection with an application to compel or stay arbitration do not expressly conflict with any provision of the FAA (see, 9 USC §§ 1-16).[8] Additionally, Congress did not intend "to occupy the entire field of arbitration” in enacting this statutory scheme (Volt Information Sciences v Leland Stanford Jr. Univ., 489 US 468, 477, supra). In the absence of any express conflict between the provisions of the FAA and *204 New York’s arbitration law or some express congressional intent to occupy the entire field of arbitration in commercial disputes, the FAA will be found to preempt State law only to the extent that the State law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress’ ” (id., at 477, quoting Hines v Davidowitz, 312 US 52, 67). Accordingly, the dispositive inquiry before us is whether application of New York arbitration law in this context "undermine[s] the goals and policies of the FAA” (Volt Information Sciences, supra, at 478). We conclude that it does not.
Our point of departure on this aspect of the preemption analysis is the United States Supreme Court’s decision in Volt Information Sciences v Leland Stanford Jr. Univ. (489 US 468, supra). In Volt, the Supreme Court held that a California statute permitting a court to stay arbitration pending resolution of related litigation was not preempted by the FAA where the parties included a clause in their arbitration agreement stating that the agreement will be governed by California law. The Court first concluded that it would not disturb the California Court of Appeal’s conclusion that the parties had incorporated California’s arbitration rules into their agreement, since the interpretation of a private contract is "ordinarily a question of state law” (id., at 474). The Court next concluded that "[tjhere is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate” (id., at 476). The Court went on to note that "[interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration — rules which are manifestly designed to encourage resort to the arbitral process — simply does not offend the rule of liberal construction set forth in Moses H. Cone [460 US 1, supra], nor does it offend any other policy embodied in the FAA” (id., at 476).
Turning its focus to preemption, the Supreme Court addressed whether the State law, which authorized a stay of arbitration where no Federal counterpart was available, created a conflict with Federal law which "would undermine the goals and policies of the FAA” (id., at 478). Concluding that it would not, the Court reasoned that the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms” (id., at 478). Applying ordinary contract principles, the Court con- *205 eluded that parties are not only free to limit by agreement the issues to be arbitrated, but also to "specify by contract the rules under which that arbitration will be conducted” (id., at 479). Finally, in key language, the Court explained that where "the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward” (id., at 479 [emphasis added]).
In the aftermath of Volt, the courts have divided on whether New York’s rule permitting the court to address a Statute of Limitations question conflicts with the compulsory arbitration provisions of the FAA and is thus preempted (compare, Chemical Futures & Options v Resolution Trust Corp., 832 F Supp 1188, 1194 [ND Ill 1993] [New York choice-of-law clause in arbitration agreement makes State arbitration rules applicable; under New York law, courts, not arbitrators, decide Statute of Limitations questions]; Seaboard Sur. Co. v Cates, 604 So 2d 570 [Fla Dist Ct App 1992] [same], with Merrill Lynch, Pierce, Fenner & Smith v Shaddock, 822 F Supp 125 [SD NY 1993] [time-bar defenses are for arbitrators, despite New York choice of law clause]; Merrill Lynch, Pierce, Fenner & Smith v Gregg, 1993 WL 616691 [US Dist Ct, MD Fla 1993] [same]; Victor v Dean Witter Reynolds, 606 So 2d 681 [Fla Dist Ct App, 5th Dist, 1992] [same], review denied 614 So 2d 502 [Fla 1993]). Those courts opting for preemption generally rely on Shearson Lehman Hutton v Wagoner (944 F2d 114 [1991]). We are not persuaded by the Wagoner court’s analysis, however, which did not cite or address the significance of the previously decided Volt case, and instead relied on two pre-Volt precedents which, critically, lack any reference to a contractual choice of law provision (Conticommodity Servs. v Philipp & Lion, 613 F2d 1222, 1224-1225 [2d Cir 1980], supra; Reconstruction Fin. Corp. v Harrisons & Crosfield, 204 F2d 366 [2d Cir], cert denied 346 US 854 [1953]). Indeed, one of those cases, Conticommodity, involved the very different situation where the time limitation was contained within the body of the contract — a matter for the arbitrator even under New York law (see, Matter of County of Rockland [Primiano Constr. Co.], 51 NY2d 1, supra).
In contrast to Wagoner and its progeny, we conclude that this State’s body of arbitration law — including the rule that courts may consider threshold Statute of Limitations claims— is not inimical to the policies of the FAA. Significantly, the *206 FAA was modeled after New York’s arbitration law (see, Prima Paint v Flood & Conklin, 388 US 395, 405, n 13; Matter of Weinrott [Carp], 32 NY2d 190, 198-199). Accordingly, no significant distinction can be drawn between the policies supporting the FAA and the arbitration provisions of the CPLR. New York’s rule permitting the courts to address Statute of Limitations defenses to arbitration where the parties so choose in no way interferes with the parties’ contractual freedom to choose arbitration or even to choose arbitration "under applicable state rules”&emdash;the overarching goal of the FAA (Empire Blue Cross & Blue Shield v Greeson’s A Place for Us, 985 F2d 459, 462 [9th Cir 1993]). In fact, by honoring the parties’ selection of New York law to govern their agreement and its enforcement, our holding advances the Federal policy of "ensuring] the enforceability according to their terms, of private agreements to arbitrate” (Volt, 489 US, at 476, supra).
Both sets of petitioners attempt to distinguish Volt on the grounds that the California law at issue there merely permitted imposition of a temporary stay of the arbitration, while an adverse ruling on the Statute of Limitations issue by the courts in these cases would result in a permanent stay of arbitration. That interpretation of the Supreme Court precedent is belied by the unqualified conclusion reached by the Court that enforcing State rules of arbitration "according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward” (id., at 479). Contrary to petitioners’ position, the Supreme Court did not rest its decision on the fact that the Court-issued stay in Volt was only temporary. Indeed, the Court consistently referred to the entire body of California’s statutory arbitration rules, and concluded without circumscription that "state rules of arbitration” may be incorporated into an agreement to arbitrate without offending the policies underlying the FAA (id., at 479). Accordingly, the potential permanency of the stay granted pursuant to New York law does not alter our conclusion that application of New York law to permit court determination of statutory timeliness issues does not conflict with the underlying policies of the FAA.
III
When making a threshold Statute of Limitations determination under New York law, the courts must apply the *207 same period of limitations in arbitration that would govern if an action were brought on the claim being arbitrated (Matter of SCM Corp. [Fisher Park Lane Co.], 40 NY2d 788). Under the New York borrowing statute (CPLR 202), a securities fraud claim arising outside this State is subject to the limitations periods of the jurisdictions where the injury occurred — generally, the place where the investors resided and sustained the economic impact of the loss (see, Dymm v Cahill, 730 P Supp 1245 [SD NY 1990]). In borrowing the foreign statute, "[a]ll the extensions and tolls applied in the foreign state must be imported with the foreign statutory period, so that the entire foreign statute of limitations * * * applie[s], and not merely its period” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C202:3, at 109 [emphasis in original]). Since the Appellate Division in each case before us did not address the Statute of Limitations arguments, including applicability of the borrowing statute, relevant accrual dates, tolls and extensions by virtue of each panel’s conclusion that the question was for the arbitrators, we remit in each case for such a determination.
Accordingly, in each case, the order of the Appellate Division should be reversed, with costs, and each case remitted to the Appellate Division, First Department, for further proceedings in accordance with this opinion.

. Petitioner is now known as Smith Barney, Inc.

. As directed by the 11th Circuit Court of Appeals, respondent pursued her arbitration claims before the NASD (see, Luckie v Smith Barney, Harris Upham & Co., 999 F2d 509 [11th Cir 1993], supra). Arbitration was held in the fall of 1994, and respondent was awarded $360,098.62 plus costs.

. CPLR 202 provides: "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.”

. Section 2 of the FAA, entitled "Validity, irrevocability, and enforcement of agreements to arbitrate,” provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.”

. The commercial transactions subject to the FAA’s dictates are defined in section 1 of that Act as: "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation”. (9 USC § 1.)

. CPLR 7502 (b), entitled "Limitation of time”, provides: "If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court * * *. The failure to assert such bar by such application shall not preclude its assertion before the arbitrators, who may, in their sole discretion, apply or not apply the bar.”

. CPLR 7503 (a), entitled "Application to compel arbitration; stay of action”, provides: "A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. Where there is no substantial question whether a valid agreement was made or complied with, and the claim sought to be arbitrated is not barred by limitation under subdivision (b) of section 7502, the court shall direct the parties to arbitrate. Where any such question is raised, it shall be tried forthwith in said court. If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action. If the application is granted, the order shall operate to stay a pending or subsequent action, or so much of it as is referable to arbitration.”

. FAA § 3 provides for a judicial stay of court proceedings "brought in any of the courts of the United States” where an issue raised therein is referable to arbitration. Additionally, section 4 of the Act authorizes "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court * * * for an order directing that such arbitration proceed in the manner provided for in such agreement” (9 USC § 4 [emphasis supplied]). These sections generally provide tools to enforce arbitration agreements and do not purport to circumscribe the issues that a State court may consider in staying or compelling arbitration where the parties’ agreement contemplates that its enforcement will be governed by the law of a particular State.