◼ In the Matter of SMITH BARNEY, INC., Respondent, v VIVIAN HAUSE et al., Appellants. [655 NYS2d 489] —Judgment, Supreme Court, New York County (Jane Solomon, J.), entered June 28, 1995, which granted petitioner's application to stay arbitration, unanimously reversed, on the law, without costs, and the application denied.

This proceeding arises out of certain investments made by respondents in 1986 and 1987. According to respondents, an employee of petitioner recommended that respondents invest a substantial portion of their assets in a single, highly speculative, limited partnership. After suffering considerable losses, respondents sought to arbitrate claims of unsuitability and

misrepresentation in the sale of the security. Following an initial dispute as to the proper arbitration forum, on November 19, 1994, respondents filed an arbitration demand with the National Association of Securities Dealers ("NASD"). Petitioner then commenced this proceeding, in which it sought to permanently stay the NASD arbitration on the grounds that it was barred by the NASD's eligibility requirement, which provides: "No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statutes of limitations" (NASD Code of Arbitration Procedure § 15).

Respondents opposed the stay, arguing, *inter alia*, that the question of whether the arbitration had been brought within the six year period provided for in the NASD Code was for the arbitrators. The IAS Court, however, held that the issue was one for the courts and that the arbitration had not been brought within the regulatory period, and granted the stay. We reach a contrary conclusion and reverse.

There has been considerable turmoil of late surrounding the issue of what questions may properly be decided by arbitrators and what questions must be decided instead in a court of law. As to arbitrations, such as the one before us, which are governed by the Federal Arbitration Act ("FAA"), the United States Supreme Court has left no question that the answer to all such questions must be found in the agreement to arbitrate (*see, Volt Information Sciences v Leland Stanford Jr. Univ.*, 489 US 468; *Mastrobuono v Shearson Lehman Hutton*, 514 US 52; *see also, Hackett v Milbank, Tweed, Hadley & McCloy*, 86 NY2d 146, 154). This is true even of the threshold question of which forum is the appropriate one to decide what is arbitrable.

However, while as to most questions involving whether the parties decided to submit a certain question to arbitration a presumption exists in favor of resolving any ambiguity in favor of arbitration (*Mitsubishi Motors v Soler Chrysler-Plymouth*, 473 US 614, 626), a different presumption applies when the question is who should determine arbitrability. As to that question, absent " 'clea[r] and unmistakabl[e]' evidence" (*First Options v Kaplan*, 514 US 938, 944, quoting *AT&T Technologies v Communications Workers*, 475 US 643, 649) that the parties entered into an agreement that the arbitrators would decide the arbitrability of their claims, it is a question for the courts (*supra; PaineWebber Inc. v Bybyk*, 81 F3d 1193, 1198).

This distinction is crucial to the instant case, since the issue that must be decided is the applicability of the six year requirement of section 15 of the NASD Code of Arbitration Procedure. This provision has repeatedly been held, by this Court, to be a provision which defines eligibility for arbitration rather than a Statute of Limitations (*Matter of Merrill Lynch, Pierce, Fenner & Smith v Manhard*, 201 AD2d 347, *revd in part on other grounds* 85 NY2d 193; *Merrill Lynch, Pierce, Fenner & Smith v DeChaine*, 194 AD2d 472, *lv denied* 82 NY2d 657). Thus, the question of its applicability is really a question of arbitrability and will be decided by the courts unless there is clear and unmistakable evidence that the parties intended that it would be decided by the arbitrator (*PaineWebber Inc. v Bybyk, supra*).

In this case, the parties agreed to arbitrate "any controversy arising out of or relating to any of [respondents'] accounts * * * or relating to any transactions or accounts with any of your predecessor firms * * * or with respect to transactions of any kind executed by, through or with you, your officers, directors, agents and/or employees, or * * * with respect to this agreement or the breach thereof, shall be resolved by arbitration conducted at the NYSE, NASD or AMEX or any self-regulatory organization ('SRO') subject to the jurisdiction of the Securities and Exchange Commission and pursuant to the arbitration procedures then in effect of any SRO as I may elect * * * This agreement shall be governed by the laws of the State of New York without giving effect to the choice of law or conflict of laws provisions thereof."

Turning to State contract law for the purpose of interpreting the parties' agreement (*First Options v Kaplan*, 514 US, *supra*, at 944; *PaineWebber Inc. v Bybyk, supra*), we find that the plain language of that portion of this clause which provides for the arbitration of "any controversy arising out of or relating to any of [respondents'] accounts * * * or * * * with respect to this agreement or the breach thereof" clearly extends to the question of whether certain transactions are covered by the scope of the agreement (*supra*). The language of the arbitration clause, standing on its own, is very broadly encompassing (*see, Mulder v Donaldson, Lufkin & Jenrette*, 224 AD2d 125), and it would require us to change the plain meaning of that language to find an ambiguity regarding the single question of whether claims are eligible for arbitration within the NASD rules and carve it out of the clause to stand on its own.

However, this clause is not the only provision in this contract relevant to the issue of who should decide questions of arbitrability. The contract also contains a provision that the agree-

ment will be governed by New York law. Clearly such language may, under proper circumstances, demonstrate an intention on the part of the parties to limit their rights to those afforded by New York arbitration law rather than Federal law (*Matter of Smith Barney, Harris Upham & Co. v Luckie*, 85 NY2d 193; *see also, Mastrobuono v Shearson Lehman Hutton, supra*).

In this context it must be recalled that there is a fundamental conflict between the principles governing an agreement subject solely to the FAA without the incorporation of State arbitration law, as to which the presumption that arbitrability will be determined by the courts may be overridden by clear and unmistakable evidence that the parties intended otherwise, and the principles of New York statutory law, which requires that the courts alone may decide arbitrability (CPLR 7503 [a]). While New York statutory rule may not override the Federal statute, reference to it in the agreement must be taken into account in interpreting the parties' intent. Thus, the question arises whether, taken in the context of the agreement as a whole, the presence of a New York choice of law clause in the instant agreement mandates the application of CPLR 7503 (a) and requires that the courts decide this issue.

In considering this question, we take into account that this Court has previously held that, where the only indication as to the parties' intent is a New York choice of law clause, the courts should decide whether a claim is eligible for arbitration under section 15 of the NASD Code of Arbitration Procedure (*see, Merrill Lynch, Pierce, Fenner & Smith v Ohnuma*, 218 AD2d 572; *Merrill Lynch, Pierce, Fenner & Smith v Manhard*, 201 AD2d 347, *supra*; *Merrill Lynch, Pierce, Fenner & Smith v DeChaine*, 194 AD2d 472, *supra*). These decisions may be contrasted with our decision in *Goldberg v Parker* (221 AD2d 267), a case which was governed exclusively by the NASD Code rather than by a contract between the parties and therefore not subject to a New York choice of law clause. Significantly, section 35 of that Code specifically permits the arbitrators to "interpret and determine the applicability of all provisions under this Code". In *Goldberg*, this Court found that arbitrability under section 15 would be determined by the arbitrators (*see also, Mulder v Donaldson, Lufkin & Jenrette, supra*; *Matter of Prudential Sec. [Purello]*, 206 AD2d 713 [3d Dept]).

However, it is not clear that in any of the cases in which we held that a New York choice of law clause required the courts to decide section 15 eligibility we were asked to interpret the contractual language present here, which so clearly and unequivocally requires that *all* controversies relating to

respondents' accounts, to the agreement, or to its breach, be arbitrated. Such language quite clearly stands in contradistinction to the implication drawn from the New York choice of law clause that the courts must decide this issue. Now that we have been asked to consider that clearly stated and broadly worded language, we find that it overrides any implication that could be drawn from a simple New York choice of law clause that the parties intended that the courts would decide section 15 eligibility..

Moreover, the decision of the Court of Appeals in *Smith Barney v Luckie* (*supra*) is not to the contrary. We recognize that, although the agreement in *Luckie* included a provision that "[a]ny controversy between Smith Barney and [Kahn] arising out of or relating to this contract or the breach thereof shall be settled by arbitration" (at 198), the Court of Appeals held that the requirement of CPLR 7502 and 7503 that the court decide the applicability of State Statutes of Limitation is incorporated into the agreement by the New York choice of law clause also present in that agreement. However, the Court specifically held that this implication could be drawn from the choice of law clause because the clause provided that the agreement "*and its enforcement*" (*supra*, at 202 [emphasis in original]) will be governed by New York law. Indeed, the Court specifically stated (at 202), "Although the parties broadly agreed to arbitrate 'any controversy' arising from the customer agreements, that clause—like all other provisions in the contract— was subject to the parties' additional qualification that New York State law provides the basis of decision for questions concerning not only the agreement, *but more critically, its enforcement.*" (Emphasis added.)

The crucial language "and its enforcement" is absent in the agreement in this case, in which the New York choice of law clause only states, without elaboration, that the agreement will be governed by New York law (*cf., Hackett v Milbank, Tweed, Hadley & McCloy*, 86 NY2d, *supra*, at 154, in which the parties' arbitration agreement "explicitly provided that New York law would govern that arbitration, and that the only grounds for vacating the arbitrator's award are those encompassed by CPLR 7509 and CPLR 7511").

Under these circumstances, we find that the completely clear and straightforward language providing that "any controversy arising out of or relating to any of [respondents'] accounts * * * or * * * with respect to this agreement or the breach thereof, shall be resolved by arbitration" governs the question here involved. Concur—Sullivan, J. P., Ellerin, Rubin and Tom, JJ.