*Woori Bank v. Citigroup Global Markets, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of April, two thousand fifteen.

PRESENT:
> ROBERT A. KATZMANN,
> > *Chief Judge*,
> JOHN M. WALKER, JR.,
> GERARD E. LYNCH,
> > *Circuit Judges*.

------------------------------------------------

WOORI BANK,

> *Plaintiff-Appellant*,

> v.                                         No. 14-3329-cv

CITIGROUP GLOBAL MARKETS, INC.,

> *Defendant-Appellee*,

CITIGROUP, INC., IVY LANE CDO LTD., IVY
LANE CDO CORP., TIERRA ALTA FUNDING I
LTD., TIERRA ALTA FUNDING I CORP.,
RIDGEWAY COURT FUNDING I, LTD.,
RIDGEWAY COURT FUNDING I CORP., FAB
US 2006-1 PLC., FAB US 2006-1 CORP.,

ARMITAGE ABS CDO, LTD., ARMITAGE ABS
CDO, INC.,

      *Defendants.*

_____

For Plaintiff-Appellant:                    CHRISTOPHER L. LEBSOCK, Hausfeld LLP, San
                                                    Francisco, CA.

For Defendant-Appellee:                  JESSICA S. CAREY (Brad S. Karp, Susanna M.
                                                      Buergel, *on the brief*), Paul, Weiss, Rifkind,
                                                      Wharton & Garrison LLP, New York, NY.

      Appeal from the United States District Court for the Southern District of New York
(Forrest, *J.*).

      **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED** that the judgment of the district court is **VACATED** and **REMANDED**.

      Plaintiff-Appellant Woori Bank ("Woori") appeals from a final judgment entered on

August 6, 2014 by the United States District Court for the Southern District of New York

(Forrest, *J.*), dismissing Woori's complaint against Defendant-Appellee Citigroup Global

Markets, Inc. ("CGMI") as time-barred. On May 15, 2012, Woori filed a complaint alleging

fraud, fraud in the inducement, negligent misrepresentation, and unjust enrichment against

CGMI for alleged misrepresentations that CGMI made to Woori in selling a $25 million interest

in the Armitage ABS CDO Ltd. collateralized debt obligation ("Armitage CDO") in March 2007.

Woori's investment in the Armitage CDO became nearly worthless by 2009 when the relevant

CDO market collapsed. On appeal, Woori argues that the district court erred in concluding that

Woori's claims were time-barred under the applicable South Korean statute of limitations

provision, Article 766 of the Civil Act. *See* Minbeob [Civil Act], Act. No. 471, Feb. 22, 1958,

2

art. 766(1) (S. Kor.). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

This Court reviews de novo both a district court's decision to dismiss a complaint as time-barred and a district court's determination of foreign law. *See Brennan v. Nassau Cnty.*, 352 F.3d 60, 63 (2d Cir. 2003) (per curiam); *Curley v. AMR Corp.*, 153 F.3d 5, 11 (2d Cir. 1998). When reviewing a district court's decision on a motion to dismiss, we must "construe [a plaintiff's] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in [the plaintiff's] favor." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (internal quotation marks omitted). If we then determine that the complaint "plausibly give[s] rise to an entitlement to relief," we must reverse the dismissal. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

Under New York law, when borrowing from another jurisdiction's statute of limitations, "all the extensions and tolls applied in the foreign state must be imported with the foreign statutory period, so that the *entire* foreign statute of limitations applies, and not merely its period." *In re Smith Barney, Harris Upham & Co. v. Luckie*, 647 N.E.2d 1308, 1316 (N.Y. 1995) (internal quotation marks and alterations omitted). The parties do not dispute that the Korean statute of limitations applies in this case.

The relevant provision of the Korean statute of limitations is codified in Article 766(1) of the Civil Act, which states:

> The right to claim for damages resulting from an unlawful act shall lapse by prescription if not exercised within three years commencing from the date on which the injured party or his agent by law becomes aware of such damage and of the identity of the person who caused it.

3

Special App. 25. The parties agree that the statute of limitations begins to run after a party has "practical and specific awareness" of its claim, as evaluated in light of all of the objective evidence. J.A. 516–17; *see also id.* at 569–70. The parties also agree that the Court should ensure that the plaintiff has a practical and specific awareness of each element of its claim—that is, that "(i) [the plaintiff] has suffered damages, (ii) there was an unlawful act (or omission) [by the defendant], and (iii) there is proximate causation between the [defendant's] act (or omission) and [the plaintiff's] ensuing damages." *Id.* at 516–17; *see also id.* at 569. The burden of demonstrating these elements falls on the "party claiming the benefit of the statute of limitations." Supreme Court [S. Ct.], 94Da13435, June 30, 1995 (S. Kor.).

On appeal, Woori argues that the district court misapplied Korean law when it: (1) determined that "the statute of limitations [under Korean law] was triggered when plaintiff knew or should have known of any and all facts sufficient to state a fraud claim," Special App. 16 n.16 (emphasis omitted); (2) failed to conduct an element-by-element analysis in deciding whether Woori had a practical and specific awareness of its claims against CGMI; and (3) ignored Korean Supreme Court precedent on the proper application of Article 766. Specifically, Woori contends that it did not have a practical and specific awareness of its claims until two events occurred in 2011—(a) the January 2011 release of a Financial Crisis Inquiry Commission report ("FCIC Report") that detailed many of the fraudulent activities of various banks, including CGMI, in relation to the financial crisis, and (b) the October 2011 filing of a complaint and proposed settlement in *SEC v. Citigroup Global Markets Inc.*, No. 11-cv-7387 (S.D.N.Y.), which made public for the first time an allegation that CGMI took a naked short position against the Class V Funding III CDO ("Class V CDO"), which was one component of the Armitage CDO.

4

According to Woori, these two public sources supplied it with sufficient publicly available facts to make it aware of its claims against CGMI.

We agree with Woori that the district court misapplied Korean law, but we reach that conclusion for reasons related to, but distinct from, those that Woori presses on appeal. The crucial question on appeal is whether Woori plausibly pleaded that it gained a "practical and specific awareness" of its claims against CGMI only on or after May 15, 2009 ("the time-bar date"). To determine whether Woori had such awareness of each of the elements of its claim against CGMI before the time-bar date, we look at the information that was either publicly available or within Woori's possession before that date. As such, we have reviewed the sixty-nine documents—including news articles, complaints filed in civil cases, and other filings and releases—that CGMI provided to the district court and that were publicly available before the time-bar date. Additionally, we have considered the "pitch books" Woori received from CGMI before May 15, 2009 that provided information about the Armitage CDO.

For the purpose of resolving this appeal, we need not delineate the specific circumstances under which a claim accrues under Korean law. Rather, it is sufficient to note that, at a minimum, a claim cannot accrue for purposes of the Korean statute of limitations until the plaintiff can state a claim for which relief may be granted.[1] Woori expresses a concern that it could be placed into a "whipsaw" if it is forced to make sufficiently particularized allegations to avoid dismissal under Rule 9(b) of the Federal Rules of Civil Procedure and its claims can accrue

---

[1] Because we assume *arguendo* that Woori was aware of all of the information that CGMI has shown was either publicly available or specifically available to Woori before May 15, 2009, we also need not consider whether a plaintiff can be found to have been practically and specifically aware of its claims if it merely should have been aware of those claims.

for statute-of-limitations purposes earlier than when it has sufficient information to state a claim. Appellant's Br. 18–19. Woori fears that it will be kept out of court under the heightened pleading requirements of Rule 9(b), even though it might eventually be barred from bringing its claims because those claims will have accrued for purposes of the Korean statute of limitations.

We agree with Woori that Korean law cannot permit such a situation. Under Korean law, a claim does not accrue before a plaintiff would be able to state a claim against a defendant. As several Korean decisions demonstrate, Korean courts apply the statute of limitations to bar a claim only in limited circumstances. For example, according to Woori's expert, the Korean Supreme Court held that even a regulatory finding of accounting fraud by two regulatory bodies—the Korean Financial Supervisory Commission and the Korean Financial Supervisory Service—did not cause the statute of limitations to run. *See* Supreme Court [S. Ct.], 2005Da65579, Jan. 18, 2008 (S. Kor.). As CGMI's expert explained, the court in that case found that the regulatory findings were insufficient because they did not provide enough information from which the plaintiff could determine exactly who was involved in the fraud. *See* J.A. 770–71. As such, even if the publicly available information would permit a generalized finding of wrongdoing (even one captured in a set of regulatory findings), the Korean statute of limitations does not run until there are more specific facts of a tortfeasor's identity, wrongful conduct, the existence of damages, and a connection between the conduct and the harm. *See* 2005Da65579; *see also* Supreme Court [S. Ct.], 97Meu18, July 24, 1998 (S. Kor.). Additionally, the Korean Supreme Court recently held that a plaintiff's awareness "should be determined reasonably by taking into consideration various objective circumstances for each case as well as the situation in which it *became possible* to claim damages." Supreme Court [S. Ct.], 2013Da215843, Sept. 4,

2014 (S. Kor.) ("Credit Card Case") (emphasis added). The Credit Card Case suggests strongly that what matters is when it is *possible* for a plaintiff to bring a claim, and this possibility quite reasonably includes the ability to make allegations that survive a motion to dismiss for failure to state a claim. As such, a claim does not accrue under Korean law until a plaintiff is practically and specifically aware of facts sufficient to state that claim in a lawsuit.

On the record before us on appeal, the information that was publicly available or specifically available to Woori before the time-bar date was insufficient for Woori to state a claim for relief against CGMI before the time-bar date. We begin by noting that forty of the sixty-nine document excerpts that CGMI provided to the district court do not even mention Citigroup or CGMI. As such, these documents could not have provided Woori with a practical and specific awareness of the tortfeasor and therefore did not cause Woori's claims to accrue. *See* J.A. 572, 770–71 (discussing Supreme Court [S. Ct.], 2005Da65579, Jan. 18, 2008 (S. Kor.)).

Seventeen additional documents are complaints filed before May 15, 2009 in various civil lawsuits against Citigroup, CGMI, or both. Of these seventeen complaints, the excerpts provided by CGMI in thirteen of them contain nothing more than unsubstantiated allegations of wrongdoing by Citigroup or CGMI. The allegations appear to be based on nothing more than the information and belief of the party bringing the lawsuit. These thirteen complaints, which contain wholly unsubstantiated allegations of fraud and scienter, cannot serve as the basis on which a court can determine, as a matter of law, that a plaintiff had a practical and specific awareness of its claims.

7

Several Korean Supreme Court decisions strongly support this principle. In the Credit Card Case, that court found that a preliminary measure taken by a regulatory body was insufficient to establish a plaintiff's practical and specific awareness of a fraud claim. *See* 2013Da215843. The plaintiff sued defendants for fraud based on actions that the defendants had taken in violation of a fair dealing statute. *Id.* The Korean Supreme Court held that even though the regulatory body canceled an agreement involving the defendants based on a "wrongful act," the fact that the defendants had challenged the regulatory action through a lawsuit against the regulatory body meant that "it cannot be said that the defendants' action was legally concluded just based on the fact that the [regulatory body] had taken measures." *Id.* It was only after the defendants lost their challenge to the regulatory action that the plaintiff could be found to have been practically and specifically aware of its claims. *See id.* The analysis in the case before us is more straightforward than it was in the Credit Card Case because the complaints against Citigroup or CGMI that were publicly available before May 15, 2009 were not even based on a regulatory proceeding; they were instead mere allegations of wrongdoing by private parties without any further support.

In another 2014 decision, the Korean Supreme Court held that a document from a regulator discussing a specific action against a potential wrongdoer was not sufficient to trigger the running of the statute of limitations. *See* Supreme Court [S. Ct.], 2012Da37343, Sept. 4, 2014 (S. Kor.) ("Insurance Case"). The court instead found that the "[p]laintiff could only recognize that [the products] are subject to suspension . . . through an official determination by the Commissioner of the Korea Food & Drug Administration." *Id.* As such, the Insurance Case also indicates that something more than a mere allegation of wrongdoing against a defendant is

8

needed before a plaintiff becomes practically and specifically aware of its claims against that defendant.

The Korean Supreme Court has also explained that the requisite awareness "cannot be determined with only presumptions and guesses about the damaging events." Supreme Court [S. Ct.], 90C8152, Mar. 22, 1991 (S. Kor.). An unsubstantiated allegation in a complaint is more akin to a presumption or guess than it is to a "practical and specific awareness." As such, a claim cannot accrue, at least as a matter of law, based solely on allegations in a civil complaint that are not substantiated in some other way.

The four remaining complaints contain more than mere allegations, but none of those complaints provides any specific information that suggests scienter, fraud, or even negligence on CGMI's part. The first complaint mentions a *Wall Street Journal* article discussing Citigroup's subprime exposure, but does not discuss anything that suggests that Citigroup engaged in fraud. *See* J.A. 464 (discussing *Ryan v. Prince*, No. 07-cv-11581 (S.D.N.Y.)). The second complaint speaks about a "year-long wave of articles chronicling how far behind Moody's Investor Service and Standard & Poor's were in downgrading all the AAA-rated toxic waste that Citigroup and other banks gorged on during the subprime-mortgage binge." *Id.* at 465 (quoting Compl., *Montgomery Cnty. Emps.' Ret. Fund v. Prince*, Civ. A No. 3436 (Del. Ch. Dec. 28, 2007)). Other than this inflammatory but unsubstantiated language about Citigroup, the portion of the complaint cited by CGMI appears to reflect negatively on the ratings agencies. The third complaint referenced by CGMI simply discusses Citigroup's exposure to subprime-related assets, but again does not provide any evidence supporting an inference of scienter. *See id.* at 484 (discussing *Brecher v. Citigroup, Inc.*, No. 09-cv-606 (S.D. Cal. Mar. 24, 2009)).

CGMI also argues that the complaint filed in *Epirus Capital Management, LLC v. Citigroup Inc.*, provided Woori with sufficient information to make it aware of CGMI's alleged wrongdoing with respect to the Class V CDO. *See id.* at 481–83 (discussing No. 09-cv-2594, (S.D.N.Y.)). But that complaint made only generalized references to the Class V CDO as "unsold waste" and an "unwanted asset[]" for CGMI. *Id.* at 482. Moreover, the complaint in *Epirus* was in fact dismissed for failure to state a claim because it was pleaded too generally. *See* 2010 WL 1779348, at *6 (S.D.N.Y. Apr. 29, 2010). And perhaps most importantly, the district court in this case acknowledged that the *Epirus* lawsuit alone would not have provided Woori with a practical and specific awareness of its claims. After considering the seventeen civil complaints that CGMI provided to the district court, we conclude that none provides enough substantiated information with which Woori could have stated a claim before May 15, 2009.

The remaining twelve documents—all of which are either news articles or public company filings—at least mention CGMI or Citigroup in a specific, substantiated way. But five of these articles relate solely to the extent of damages suffered as a result of Citigroup's exposure to this market. A sixth mentions how Citigroup was taken by surprise during the downturn, which actually undercuts an inference of scienter. A seventh describes the default of the Class V CDO, but provides no explanation for the default or suggestion that Citigroup or CGMI engaged in fraud. Four others mention lawsuits against Citigroup or CGMI, but contain no information beyond the allegations contained in civil complaints filed in those lawsuits. Of these twelve documents, only the December 16, 2008 *Washington Post* article titled *Frenzy* comes close to suggesting a fraudulent or negligent mental state on CGMI's part. *See* J.A. 479. But even this reference does not actually suggest that CGMI acted fraudulently, much less with respect to the

10

transactions at issue here. An individual named Julian Mann is quoted as saying, "A lot of people knew [that the CDO market] was bogus, but the money was too good," but the reference does not indicate that Mann is speaking about CGMI when he says "[a] lot of people knew this was bogus." *Id.* As such, none of this information was sufficient for the district court to find that, as a matter of law, Woori could have stated a claim for relief before May 15, 2009.

Finally, Woori had access to a pitch book that CGMI created in February 2007 and provided to Woori shortly thereafter. This pitch book contained CGMI's projections for the Armitage CDO, and Woori claims that it relied on the pitch book when making its decision to invest in the CDO. Even though Woori had this document well before May 15, 2009, we conclude that, based on the information publicly available before the time-bar date, it is plausible that Woori was unable to determine before that date that the representations contained in the pitch book were *misrepresentations*.

Accordingly, after our review of the collection of documents that CGMI identifies as publicly available or specifically available to Woori before May 15, 2009, we find that Woori did not have a sufficient basis to state a claim upon which relief could be granted. Specifically, the information presented to this Court about what was publicly available before the time-bar date was insufficient to permit Woori to plausibly allege that CGMI made a misrepresentation or that CGMI did so with a culpable mental state. As such, based on our examination of the Korean courts' interpretation of Article 766 of Korea's Civil Act, we find that the district court erred in dismissing Woori's complaint as time-barred on these facts.

Nevertheless, we must consider CGMI's argument that the resolution of this appeal is controlled by our previous decision in a case involving a similar but not identical complaint that

Woori filed against Merrill Lynch. *See Woori Bank v. Merrill Lynch* ("*Merrill II*"), 542 F. App'x

81 (2d Cir. 2013), *aff'g Woori Bank v. Merrill Lynch* ("*Merrill I*"), 923 F. Supp. 2d 491

(S.D.N.Y. 2013).

After considering the circumstances in this case and the *Merrill* case, we conclude that

the cases are distinguishable because the information that was publicly available about Merrill

Lynch before the relevant time-bar date in that case was substantially more indicative of fraud

than was the information about CGMI before the time-bar date in this case. The best illustration

of this difference is a comparison of the way that the district court in this case described the

information that was publicly available before May 15, 2009 with the way in which the *Merrill II*

Court described the information that was publicly available about Merrill Lynch's actions before

May 18, 2009.

In this case, the district court wrote that the sixty-nine documents that were publicly

available before May 15, 2009:

> gave notice, *inter alia*, of deterioration in the housing market; of the
> possibility that banks had used mortgage collateral that violated
> underwriting standards; that Clayton's clients were ignoring its warnings;
> that banks had moved "toxic" collateral into CDO products; and that
> ratings agencies had come under scrutiny for giving unjustifiably
> optimistic credit ratings to CDOs.

Special App. 17–18. None of these facts is at all specific to CGMI. To the contrary, with the

exception of the lawsuits, nothing specific about CGMI in the sixty-nine documents would have

allowed Woori to adequately plead fraud.

By contrast, the *Merrill II* Court described the information that was publicly available

about Merrill Lynch before the time-bar date in that case as: "the overall publicity surrounding

Merrill Lynch's CDOs, the lawsuits filed against Merrill Lynch relating to the CDOs, and the government investigations into Merrill Lynch's activities." *Merrill II*, 542 F. App'x at 82. The *Merrill II* Court's specific references to Merrill Lynch were no accident. As the district court's detailed examination of the public information indicated, there was a great deal of information publicly available before the time-bar date about investigations into Merrill Lynch's conduct:

> Between early 2007 and May 2009, problems with mortgage standards and CDO ratings were reported extensively by the media and served as the basis for multiple government investigations and individual lawsuits. Not only did these sources publicize general problems with mortgages issued by subprime lenders, they also exposed specific facts regarding Merrill Lynch that Woori currently employs to substantiate its fraud claims.

*Merrill I*, 923 F. Supp. 2d at 496.

Accordingly, the *Merrill II* decision does not control this appeal, and we hold that the district court erred when it dismissed Woori's claims against CGMI as time-barred. We note, however, that we are not deciding that, as a matter of law, Woori had a "practical and specific awareness" of its claims only on or after May 15, 2009. Rather, we decide only that, based on the complaint and the other documents that we may consider in the record, Woori has plausibly alleged claims that are not time-barred. Furthermore, because we do not decide that Woori's claims are not time-barred as a matter of law, we also do not reach the question of whether Woori gained a "practical and specific awareness" of its claims in January 2011 when the FCIC released its report, in October 2011 when the SEC released its complaint and proposed settlement in *SEC v. Citigroup Global Markets Inc.*, No. 11-cv-7387 (S.D.N.Y.), or at some other point. Finally, we note that our analysis addresses only Korean law's relatively permissive approach to determining when the statute of limitations in a fraud case of this sort begins to run.

13

Nothing in this order should be read to intimate what the result would have been had U.S. law been applied.

For the reasons stated herein, we **VACATE** the district court's judgment and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

14