15-1387-cv
*IKB Deutsche Industriebank AG v. McGraw Hill Financial Inc., et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of December, two thousand fifteen.

PRESENT:   ROBERT D. SACK,
           DENNY CHIN,
           RAYMOND J. LOHIER, JR.,
                     *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IKB DEUTSCHE INDUSTRIEBANK AG,
                     *Plaintiff-Appellant*,

                     v.                                    15-1387-cv

McGRAW HILL FINANCIAL, INC., FKA The McGraw-Hill Companies, Inc., DBA Standard & Poor's Ratings Services, STANDARD & POOR'S FINANCIAL SERVICES LLC,
                     *Defendants-Appellees*.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

* The Clerk of Court is directed to amend the caption as shown above.

FOR PLAINTIFF-APPELLANT: KATHLEEN M. SULLIVAN, Daniel L. Brockett, Jeremy D. Andersen, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, and Los Angeles, CA, *and* David H. Wollmuth, William A. Maher, Thomas P. Ogden, Jeffrey Coviello, Ryan A. Kane, Wollmuth Maher & Deutsch LLP, New York, NY.

FOR DEFENDANTS-APPELLEES: FLOYD ABRAMS, Jason M. Hall, Krista Friedrich, Roxana Labatt, Cahill Gordon & Reindel LLP, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant IKB Deutsche Industriebank AG ("IKB"), a German commercial bank, sued defendants-appellees McGraw Hill Financial, Inc. and its wholly owned subsidiary, Standard & Poor's Financial Services (together, "S&P") for fraud, negligent misrepresentation, and civil conspiracy to commit fraud in relation to credit ratings issued by S&P with respect to a structured investment vehicle called "Rhinebridge." IKB appeals from a final judgment entered on March 31, 2015 granting S&P's motion to dismiss the complaint as time-barred under New York's borrowing statute and German law. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

According to the complaint, Rhinebridge was designed to earn a profit by issuing debt securities and investing the proceeds in income-producing assets,

including mortgage-backed securities. Rhinebridge was managed by an IKB subsidiary, which hired S&P not merely to rate the instrument's creditworthiness, but also to help create and operate it. S&P received triple its customary fees for performing those additional services, with a portion of its compensation contingent on Rhinebridge receiving high credit ratings. That arrangement placed S&P in the unusual position of rating an instrument of its own design, with resulting economic incentives to issue favorable ratings.

Rhinebridge launched in June 2007, at which point S&P issued high ratings for the instrument's overall structure and several of its debt securities. IKB immediately invested $149 million in debt securities. Over the next two months, S&P reaffirmed its high ratings despite mounting concerns regarding the value of mortgage-backed securities, and IKB invested an additional $425 million. In September 2007, however, S&P placed Rhinebridge on "watch negative." By October 2007, Rhinebridge had defaulted and its notes were downgraded to "junk" status, resulting in hundreds of millions of dollars in losses to IKB and several other institutional investors, including King County, Washington.

In 2009, King County sued both IKB and S&P in federal court, alleging -- among other things -- that S&P had fraudulently inflated its Rhinebridge ratings. *See* JA 119. To support that claim, King County's complaint cited a range of publicly available documents, including: 1) an instant message conversation between two S&P analysts concerning the company's rating of a financial instrument similar to Rhinebridge, which

stated that the "model def[initely] does not capture half of the ris[k]," and that an instrument "could be structured by cows and we would rate it"; 2) a 2006 email sent by an S&P analyst stating that ratings agencies were creating "an even bigger monster -- the CDO market," and adding, "[l]et's hope we are all wealthy and retired by the time this house of cards falters";[1] and 3) a pair of 2008 *Bloomberg* articles that quoted former S&P managing directors as stating, regarding the company's rating of financial instruments that invested in mortgage-backed securities, "I knew it was wrong at the time," and "[S&P] thought they had discovered a machine for making money that would spread the risks so far that nobody would ever get hurt." JA 146-47. King County also cited S&P's compensation scheme for Rhinebridge, which created a financial incentive for high ratings, as additional support for its fraud claim. JA 127, 132.

IKB entered into a statute of limitations tolling agreement with S&P on May 10, 2013, and filed this action on May 12, 2014. The district court dismissed the suit as untimely under Germany's statute of limitations, which applies here under New York's borrowing statute. This Court reviews *de novo* both a district court's decision to dismiss a complaint as untimely and a district court's determination of foreign law. *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001); *Curley v. AMR Corp.*, 153 F.3d 5, 11 (2d Cir. 1998).

---

[1] Special purpose vehicles like Rhinebridge are essentially CDOs (collateralized debt obligations).

New York's borrowing statute requires a non-resident plaintiff to file a claim within the shorter of either: 1) the New York statute of limitations; or 2) the statute of limitations in the jurisdiction in which the claim accrued. N.Y. C.P.L.R. § 202; *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999) ("When a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued. This prevents nonresidents from shopping in New York for a favorable Statute of Limitations." (footnote omitted)). When borrowing a foreign jurisdiction's statute of limitations, the tolling provisions and trigger rules are also borrowed. *GML, Inc. v. Cinque & Cinque, P.C.*, 9 N.Y.3d 949, 951 (2007); *Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 207 (1995) ("In borrowing the foreign statute, all the extensions and tolls applied in the foreign state must be imported with the foreign statutory period, so that the *entire* foreign statute of limitations . . . applies, and not merely its period." (internal quotation marks and alterations omitted)).

Under New York law, IKB's claim accrued in Germany. *See Glob. Fin. Corp.*, 93 N.Y.2d at 529 ("When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."). The parties agree that the relevant provision of German law is Section 195 of the German Civil Code, which has a three-year limitations period. That period begins to run at the end of the calendar year in which 1) the claim arose and 2) the plaintiff either has knowledge of the circumstances giving rise to the claim and the identity of the

- 5 -

defendant, or would have had such knowledge but for gross negligence. Bürgerliches Gesetzbuch [BGB] [Civil Code], § 199.

The parties' experts agree that, under German law, a plaintiff has knowledge of the circumstances giving rise to the claim when she obtains knowledge of the facts necessary to commence an action in Germany with an "expectation of success" or "some prospect of success," though not without risk and even if the prospects of success are uncertain. JA 383, 1019-20. To satisfy this standard, a plaintiff need not know all the relevant details or have conclusive proof available; knowledge of the factual circumstances underlying the claim is sufficient. *See, e.g.*, Bundesgerichtshof [BGH] [Federal Court of Justice] Feb. 26, 2013, Neue Juristische Wochenschrift [NJW] 1801, 2013.

For example, according to IKB's expert, the German Supreme Court ("BGH") has held that a plaintiff investor did not have sufficient knowledge to trigger the statute of limitations against a defendant broker when the plaintiff was aware only of investment losses that -- from the plaintiff's point of view -- could be attributed to market conditions alone. JA 1022. In that case, the BGH held that a plaintiff must also know facts that would allow him to conclude that the defendant was culpable in a way that caused plaintiff's losses. Bundesgerichtshof [BGH] [Federal Court of Justice] July 13, 2010, [BKR] 421, 2010 ("[T]he subjective preconditions of § 199 [BGB] Para 1 No. 2 at most could exist if the Plaintiff, in addition to . . . [knowing the] circumstances allowing him to conclude that the transactions brokered by [the defendant broker's employer]

were hopeless for him, also was aware . . . of circumstances from which it could be concluded that the [broker] was participating conditionally and willfully in [impermissible conduct]."). This is consistent with how other American courts have articulated the standard for triggering the German statute of limitations. *See In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, No. 2:11-ML-02265-MRP, 2014 WL 3529686, at *5 (C.D. Cal. July 14, 2014) ("'[K]nowledge' under German law exists when the plaintiff possesses sufficient information to 'formulate a consistent and coherent statement of the claim.' . . . A plaintiff need not possess evidence sufficient to sustain its allegations, know every detail of its claim, or exclude every potential litigation risk." (quoting *Deutsche Zentral-Genossenschaftsbank AG v. Bank of America Corp.*, No. 2:13-CV-01118, slip op. at 8-19 (C.D. Cal. June 18, 2014) (under seal))).[2]

Upon review of the record, we agree with the district court that the facts available to IKB in 2009 -- including those cited in King County's complaint -- triggered Germany's three-year limitations period because they created a sufficient "prospect of success" for a fraud action against S&P. Contrary to IKB's argument on appeal, King

_____

[2] On appeal, IKB argues that the district court erred in holding that a plaintiff is charged with knowledge under German law as soon as the plaintiff is able to form a consistent and coherent statement of the claim. It is clear, however, that the district court applied the correct standard for triggering the German limitations period. The district court stated that plaintiffs must have "sufficient knowledge to be able to assert a 'viable' claim against the defendant" which is "one that has a 'prospect of success, if not without risk.'" JA 1887 (quoting parties' expert reports). It then elaborated on that standard in several respects, noting that a plaintiff need not have "sufficiently certain evidence at hand in order to conduct a legal dispute essentially without risk" and that "the standard requires that the plaintiff possess sufficient information to 'be able to formulate a consistent and coherent statement of the claim.'" *Id.* at 1888 (quoting parties' expert reports).

County's complaint contained more than unsubstantiated allegations. It documented communications by several S&P employees that suggested a systemic and conscious disregard of risk in rating financial instruments, like Rhinebridge, that invested in mortgage-backed securities. The complaint also described S&P's role in designing Rhinebridge and its clear economic incentive to rate the instrument highly. Those facts, considered alongside Rhinebridge's dramatic collapse, offered significant evidentiary support for a fraud claim against S&P -- particularly because plaintiffs usually must rely on such circumstantial evidence to establish fraudulent scienter.

Because IKB had "knowledge of the circumstances giving rise to the claim and of the identity of the [defendant]," § 199 BGB, by December 31, 2009, the three-year German limitations period expired on December 31, 2012, prior to the parties' tolling agreement. Therefore, IKB's complaint was untimely.

We have considered all of IKB's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk